**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JOSEPH JOHN OKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-CV-15793 |
| | ) | |
| v. | ) | Hornorable Elaine E. Bucklo |
| | ) | |
| UNITED AIRLINES, INC. & | ) | |
| AIR LINE PILOTS ASSOCIATION, | ) | |
| INTERNATIONAL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO DISMISS OF
DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION,
  INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

December 18, 2023

*Attorneys for Defendant Air Line Pilots
  Association, International*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES.............................................................................................. iii

GLOSSARY OF DEFINED TERMS ................................................................................ i

ALLEGED FACTS ........................................................................................................3

    A.    The Parties .........................................................................................3

    B.    Federal Funding of United During the COVID-19 Pandemic ..................3

    C.    The UPA ...........................................................................................3

    D.    LOA 21-02 .......................................................................................4

    E.    United's Vaccine Mandate and Plaintiff's Accommodation
        Pursuant to United's Accommodation Process ......................................4

    F.    Status Quo Grievances Concerning the Vaccine Mandate........................5

ARGUMENT ................................................................................................................5

I.    Oka Does Not State a Claim for Breach of the Duty of Fair
    Representation...................................................................................6

    A.    The DFR..........................................................................................6

    B.    The Six-Month Limitations Period Bars Oka's DFR Claims. ..................7

    C.    Oka's DFR Claims Are Implausible on the Merits. ...............................7

        1.    The Complaint Does Not Plausibly Allege that ALPA's
            Decision Not to Challenge the Vaccine Mandate Violated
            the DFR or the RLA.................................................................7

            a.    United's Alleged Violation of the RLA's Status Quo
                Provisions.......................................................................7

            b.    Oka Does Not Plausibly Allege that United's
                Vaccine Mandate Breached the UPA. ...............................8

            c.    Oka Does Not Plausibly Allege Arbitrary,
                Discriminatory or Bad-Faith Conduct with Respect
                to the Vaccine Mandate. ..................................................9

        2.    Oka Does Not State a Plausible DFR Claim Concerning
            LOA 21-02. ............................................................................10

III.     Oka Does Not Plausibly Allege that ALPA Violated His Title VII Rights. ......................12

         A.     ALPA Is Not Liable for the Accommodation Offered by United. .........................12

         B.     Title VII Did Not Require ALPA to Advocate for a Different
                Accommodation. ......................................................................................................13

         C.     Title VII Did Not Require ALPA to Oppose United's Mandate. ...........................14

IV.      Oka Fails to State a Claim Under Kentucky Law. ..............................................................15

CONCLUSION ....................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Alexander v. Gardner-Denver,* 415 U.S. 36 (1974)........................................................10, 13

*ALPA v. O'Neill,* 499 U.S. 65 (1991) .........................................................................6, 11

*ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973) .......................10, 13

*Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge,*
   403 U.S. 274 (1971)................................................................................................6, 9, 11

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...............................................................................5

*Babrocky v. Jewel Food Co.*, 773 F.2d 857 (7th Cir.1985).............................................14

*Beatty v. Frito-Lay, Inc.*, 429 F. Supp. 3d 342 (E.D. Ky. 2019).....................................15

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)...............................................................5

*Bishop v. ALPA*, 5 F.4th 684 (7th Cir. 2021).....................................................................9

*Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67
   (1989)...................................................................................................................................6

*Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501 (7th Cir. 2013).............................3

*Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n,* 491 U.S. 299 (1989)..................................8

*Cunningham v. ALPA,* 769 F.3d 539 (7th Cir. 2014)........................................................8

*DelCostello v. IBT,* 462 U.S. 151 (1983)...........................................................................8

*Dozier v. TWA, Inc.*, 760 F.2d 849 (7th Cir. 1985)..........................................................7

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)..................................12

*EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656 (7th Cir. 2003) ..................14

*Ford Motor Co. v. Huffman,* 345 U.S. 330 (1953).............................................................6

*Freeman v. Loc. Union No. 135*, 746 F.2d 1316 (7th Cir. 1984) ....................................10

*Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171 (7th Cir. 1995) .........................................10

*Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987)........................................................14

*Hamade v. Valiant Gov't Servs., LLC*, 2019 WL 1410904 (W.D. Ky.) ........................................15

*Irvin v. Aubrey*, 92 S.W.3d 87 (Ky. Ct. App. 2001) ..............................................................15

*Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538 (7th Cir. 1987) ..............................................7

*Killebrew v. Loc. Union 1683 of AFSCME*, 651 F. Supp. 95 (W.D. Ky. 1986) ..............................13

*Leigh v. Artis-Naples, Inc.*, 2022 WL 18027780 (M.D. Fla.) .........................................................12

*Martin v. Loc. 1513 & Dist. 118 IAM*, 859 F.2d 581 (8th Cir 1988) ..............................................14

*Ne. Ill. Reg'l Commuter Rail Corp. v. Int'l Ass'n of Sheet Metal, Air, Rail, &
    Transp. Workers*, 578 F. Supp. 3d 985 (N.D. Ill. 2022) .....................................................8

*Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363 (7th Cir. 2003) .................................................11

*Okoro v. Cook Cnty. Health & Hosp. Sys.*, 2022 WL 1266432 (N.D. Ill.) ..................................14

*Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293 (7th Cir. 1992) ..........................8

*Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ....................................................................13

*President v. Ill. Bell Tel. Co.*, 865 F. Supp. 1279 (N.D. Ill. 1994) .............................................14

*Privler v. CSX Transp., Inc.*, 2021 WL 3603334 (N.D.N.Y.) ..........................................................12

*Ranieri v. UTU*, 743 F.2d 598 (7th Cir. 1984) ......................................................................6

*Reed v. UAW*, 945 F.2d 198 (7th Cir. 1991) .........................................................................9

*Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561 (N.D. Ill.) ...............................................3

*Stephens v. Am. Airlines, Inc.*, 596 F. Supp. 3d 1059 (N.D. Ill. 2022) .....................................8

*SWAPA v. Sw. Airlines Co.*, 2021 WL 4975010 (N.D. Tex.) ....................................................8

*TWA v. Hardison*, 432 U.S. 63 (1977) ................................................................................12

*Union Underwear Co. v. Barnhart*, 50 S.W.3d 188 (Ky. 2001) ..............................................15

*United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990) ..................................................6

*Vaca v. Sipes*, 386 U.S. 171 (1967) ....................................................................................6

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) ..........................2

*West v. Conrail*, 481 U.S. 35 (1987) ...................................................................................6

*White v. Gen'l Motors Corp.*, 1 F.3d 593 (7th Cir. 1993) ........................................................8

*Wickstrom v. ALPA*, 2023 WL 5720989 (N.D. Ill.) ........................................................9, 10, 11

*Wilson v. Chicago & Nw. Transp. Co.*, 728 F.2d 963 (7th Cir. 1984) ...............................8

**Statutes, Rules, and Regulations:**

CARES Act, Pub. L. 116-136 ...............................................................................3, 11

Kentucky Civil Rights Act, K.R.S. §344.010, *et seq.* ....................................................15

Railway Labor Act, 45 U.S.C. § 156 ...............................................................*passim*

15 U.S.C. § 9072(a) ....................................................................................3

15 U.S.C. § 9074 (a) ...................................................................................3

42 U.S.C. § 2000e(j) ...............................................................................10, 12

42 U.S.C. § 2000e-2 ............................................................................12, 13, 14

42 U.S.C. § 2000e-5 ..................................................................................10

Fed. R. Civ. P. 8(a)(2) ................................................................................5

Fed. R. Civ. P. 12(b)(6) .............................................................................2, 5

29 C.F.R. § 1605.2 (c)(1) ............................................................................12

29 C.F.R. § 1605.2 (d)(2) ............................................................................12

**Miscellaneous:**

Exec. Order No. 14042, 86 Fed. Reg. 50985 § 1 (Sept. 9, 2021) ......................................11

FDA, *FDA Approves First COVID-19 Vaccine* (Aug. 23, 2021),
    https://www.fda.gov/news-events/press-announcements/fda-approves-
    first-covid-19-vaccine ...........................................................................4

FDA, *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency
    Use Authorization for First COVID-19 Vaccine* (Dec. 11, 2020),
    https://www.fda.gov/news-events/press-announcements/fda-takes-key-
    action-fight-against-covid-19-issuing-emergency-use-authorization-first-
    covid-19 ........................................................................................4

## GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| ALPA | Defendant Air Line Pilots Association, International and, collectively, ALPA and the United Airlines Master Executive Council of ALPA |
| CBA | Collective Bargaining Agreement |
| Compl. | Complaint, Dkt. No. 1 (filed Oct. 3, 2023) |
| DFR | Duty of Fair Representation |
| EUA | Emergency Use Authorization |
| FDA | Food and Drug Administration |
| GRP | United Pilots' Grievance Review Panel |
| KCRA | Kentucky Civil Rights Act |
| LOA 21-02 | Letter of Agreement between ALPA and United ("COVID Vaccinations"), dated May 25, 2021 |
| RLA | Railway Labor Act, 45 U.S.C. §§ 151-188 |
| Status Quo Grievances | Grievances filed by groups of individual pilots, joined by three Plaintiffs, alleging that United's vaccine mandate violated UPA, LOA 21-02, and RLA |
| United | United Airlines, Inc. |
| UPA | United Pilots Agreement, the collective bargaining agreement between United and ALPA |

United Airlines, Inc. ("United") pilot Joseph Oka sues the carrier and his union, the Air Line Pilots Association, International ("ALPA"), claiming religious discrimination under federal and Kentucky law and breach of ALPA's duty of fair representation ("DFR") in connection with United's COVID-19 vaccination policy. As shown below, his DFR claims are time-barred, and he does not state a claim for a DFR breach or discrimination.

In late 2020, after Congress provided financial support to the airline industry, the federal Food and Drug Administration ("FDA") issued the first emergency use authorization ("EUA") for a COVID-19 vaccine. In May 2021, ALPA and United negotiated a letter of agreement ("LOA 21-02") that barred United from mandating vaccination, provided financial incentives to encourage pilots to vaccinate, and addressed practical challenges presented because certain foreign countries imposed limits on unvaccinated crewmembers. But United reserved the right in LOA 21-02 to terminate the agreement and mandate vaccination. In August 2021, United did so after FDA granted final approval of a vaccine. United required all pilots to present proof of vaccination by September 27, 2021, or face termination.

Plaintiff objected to vaccination on religious grounds. He applied for, and United granted him (and others) an accommodation placing him on an unpaid leave of absence in lieu of vaccination. Thereafter, he was vaccinated and returned to work.

Oka insists that ALPA should have challenged United's vaccine policy either under the collective bargaining agreement ("UPA") or as a violation of the RLA's status quo obligation. But UPA Section 21-K expressly permits United to change personnel policies without ALPA's consent and thus set the statutory status quo. When Oka and other pilots filed contractual grievances over the policy, ALPA's Grievance Review Panel ("GRP") declined to submit the

grievance to arbitration, explaining in March 2022 that United could impose the mandate under Section 21-K.

A six-month limitations period governs DFR claims. Oka sued on October 3, 2023, at least 18 months after the actions challenged here, and his DFR claim accordingly is time-barred. That claim also is legally baseless as Oka does not plausibly allege that ALPA's position on the mandate lacked a rational basis (as it was fully justified by the UPA) or that ALPA acted in a discriminatory or bad faith manner by failing to oppose the mandate.

Oka's Title VII and Kentucky statutory claims fare no better. His discrimination claim is confusing at best as he bases his claim against ALPA on United's conduct as his employer in providing an allegedly unreasonable accommodation, but he does not assert that ALPA had the power to change United's accommodation or influenced United's decision. His Kentucky Civil Rights Act ("KCRA") claim similarly describes only conduct by, and statutory terms concerning, United, not ALPA.

Even if Oka alleges that ALPA violated Title VII and the KCRA, neither claim is plausible. As a matter of law, ALPA is not liable for United's proffered accommodation, and ALPA had no duty to seek a different accommodation because it was not Oka's exclusive representative on that statutory claim. Moreover, Kentucky law does not apply to the alleged discrimination, which took place out of state.

This Court accordingly should dismiss this case under Rule 12(b)(6).

## ALLEGED FACTS

The following facts are as recited in the Complaint, supplemented by documents referenced therein and facts as to which the Court may take judicial notice.[1]

### A. The Parties

Oka is a United pilot based in Chicago; ALPA is his collective bargaining representative; and United is a major American airline. Compl. ¶¶ 12, 17-19.

### B. Federal Funding of United During the COVID-19 Pandemic

In 2020, after passenger air transportation was curtailed by the COVID-19 pandemic, Congress provided air carriers including United with financial support through the "CARES" Act, conditioned on the airline's agreement not to furlough employees or reduce pay rates until September 2021 or the funds ran out. Compl. ¶ 26; 15 U.S.C. §§ 9072(a), 9074(a). United received other federal financial benefits as well. Compl. ¶ 26.

### C. The UPA

At all relevant times, the UPA established the terms and conditions of pilot employment at United. Id. ¶ 42; App. 2 (¶ 3), 8-72. The UPA addresses United's ability to change personnel policies:

> Company personnel policy which affects pilots shall not be changed without giving advance notice to the Association and affording them the opportunity to comment. Further, no change shall be made to any Company personnel policy which is contrary to any of the terms of this Agreement. [App. 65 (§ 21-K).]

Under the UPA, pilots may file non-disciplinary grievances and must first appeal United's decision internally. App. 2-3 (¶ 7), 50-51 (§ 17-A-(1-4, 7)). Further appeal is to the System

---

[1] The Court may consider the documents in the attached Appendix, as the Complaint cites them and they are "central to" it. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). The Court also may take judicial notice of the later-cited FDA materials. *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561, *3 (N.D. Ill.)*.

Board, the arbitral body created by the UPA. *Id.* 50 (§ 17-A-5). The Board has jurisdiction over disputes arising from "interpretation" or "application" of the UPA and considers "any dispute properly submitted to it by" ALPA's President. *Id.* 59 (§ 18-C). The UPA also provides for a Grievance Review Panel when a pilot disputes ALPA's decision not to submit a non-disciplinary grievance to the Board. *Id.* 50-51 (§ 17-A-6). After a hearing, the GRP may decide to submit that grievance to the Board, and the UPA accordingly extends applicable time limits. *Id.* (§ 17-A-6-a).

### D.    LOA 21-02

In December 2020, FDA issued the first EUA for a COVID-19 vaccine.[2] In May 2021, ALPA and United signed LOA 21-02, which barred United from requiring COVID vaccination, provided financial incentives for pilots to be vaccinated, and allowed United to designate airports as vaccine destinations if those places imposed limits on unvaccinated crewembers. Compl. ¶¶ 48-49; App. 73-80. Disputes over United's designations were arbitrable. App. 79 (¶ 12.C). United could terminate the LOA on notice, however. *Id.* 79. Plaintiff alleges United pilots had to ratify LOA 21-02 but were not provided a chance to do so. Compl. ¶¶ 48, 119.

### E.    United's Vaccine Mandate and Plaintiff's Accommodation Pursuant to United's Accommodation Process

In August 2021, FDA approved a COVID-19 vaccine (https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine), and United announced that it was terminating LOA 21-02 and requiring pilots to be vaccinated by September 27, 2021, or face discharge. Compl. ¶¶ 25, 30, 50-51. United created an accommodation process for vaccine objectors. *Id.* ¶ 32. Oka sought and received a religious accommodation from United and was

---

[2] *See* https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19.

placed on unpaid leave. *Id.* ¶¶ 60, 63-67. After five months on leave, he was vaccinated and returned to work. *Id.* ¶ 71.

### F.     Status Quo Grievances Concerning the Vaccine Mandate

Oka and others filed grievances asserting that United's mandate violated the RLA's status quo requirement and UPA Section 1(a) (which recognizes ALPA as the pilots' collective bargaining representative), apparently on a theory that the recognition clause mandated negotiations before United could require vaccination. Compl. ¶¶ 113-14. United denied those grievances. App. 93-96.

ALPA decided not to submit those grievances to arbitration before the Board, and the GRP reviewed that decision. *See* Compl. ¶¶ 15, 113; App. 123-29. On March 11, 2022, following a two-day hearing, the GRP also declined to submit them to the Board based on the UPA's language and the practice at United:

> [United] could impose the vaccination requirement under the UPA, and any lawsuit alleging that United violated the RLA status quo obligation would be baseless. Furthermore, the Courts have rejected RLA claims challenging Covid-19 vaccination policies at Southwest and METRA on this basis. Also, when looking at specific language in the UPA, there is nothing within it that addresses vaccination mandates or limits [United] in that respect. Section 21-K recognizes that [United] may change personnel policies upon notice to ALPA, even though ALPA does not have to agree beforehand to any such changes. [United] has changed personnel policies in the past and has mandated the Yellow Fever vaccine for pilots operating to certain locations, among other policies. [App. 124-25.]

### ARGUMENT

Rule 12(b)(6) requires courts to view complaints in the light most favorable to plaintiffs and assume specific factual allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and even factual allegations must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009). Plaintiffs may not offer "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," *id.* at 678-79. A "plausible" claim requires more than the "conceiv[ability]" or "sheer possibility" of unlawful conduct. *Id.* at 678; *Twombly*, 550 U.S. at 570. Absent such plausibility, the Complaint must be dismissed because it "has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief[.]'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**I.      Oka Does Not State a Claim for Breach of the Duty of Fair Representation.**

**A.      The DFR**

The DFR is "a purposefully limited check" on the "'wide range of reasonableness [that] must be allowed a statutory bargaining representative in serving the unit it represents.'" *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). The DFR does not permit courts to second-guess how a union bargains or administers a CBA. Rather, judicial review of union actions under the DFR "must be highly deferential, recognizing the wide latitude" that unions need to perform their collective bargaining functions effectively. *ALPA v. O'Neill*, 499 U.S. 65, 78 (1991).

So, mistakes in judgment do not breach the DFR. *Rawson*, 495 U.S. at 372-73. Rather, a DFR plaintiff must show that the union's actions are outside its "wide latitude" as representative, *O'Neill*, 499 U.S. at 78, because they are: (1) ***"arbitrary,"*** i.e., "so far outside a 'wide range of reasonableness'" as to be "wholly 'irrational,'" *id.* (quoting *Huffman*, 345 U.S. at 338); (2) ***"discriminatory,"*** which requires "substantial evidence" of discrimination that is "intentional, severe, and unrelated to legitimate union objectives," *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 301 (1971), or based on an "invidious" trait such as race, *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 73-74 (1989); or (3) in ***"bad faith,"*** demonstrated by "substantial evidence of fraud, deceitful action or dishonest conduct." *Lockridge*, 403 U.S. at 299 (internal quotations omitted).

The DFR bars unions from "arbitrarily ignor[ing] a meritorious grievance or process[ing] it in a perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967).

**B.      The Six-Month Limitations Period Bars Oka's DFR Claims.**

The six-month limitations period governing DFR suits bars Oka's DFR claims. *West v. Conrail*, 481 U.S. 35, 37-38 (1987); *Ranieri v. UTU*, 743 F.2d 598, 600 (7th Cir. 1984). That period began to run when Oka "discover[ed], or in the exercise of reasonable diligence should have discovered, the acts constituting" ALPA's alleged DFR breach. *Dozier v. TWA, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985) (citation omitted).

Oka filed this suit on October 3, 2023, but his DFR claims accrued by the fall of 2021. Specifically: (1) United announced and implemented the vaccine mandate in August/September 2021, and placed Oka on unpaid leave in November 2021, but ALPA did not challenge the mandate, instead stating that the UPA allowed it (Compl. ¶ 43); (2) the GRP refused to submit Oka's Status Quo Grievance to the Board in March 2022 (App. 123-29); and (3) earlier still, LOA 21-02 was adopted without pilot ratification in May 2021 and expired in September 2021 (Compl. ¶¶ 50-51). As all of this transpired more than six months before Oka filed suit, his DFR claims are time-barred and should be dismissed.[3]

**C.      Oka's DFR Claims Are Implausible on the Merits.**

**1.      The Complaint Does Not Plausibly Allege that ALPA's Decision Not to Challenge the Vaccine Mandate Violated the DFR or the RLA.**

**a.      United's Alleged Violation of the RLA's Status Quo Provisions**

---

[3] Oka's filing of Title VII charges did not toll the six-month DFR limitations period. As DFR claims are independent of Title VII claims, "the time for filing a [DFR] claim is not tolled by pursuing a Title VII claim with the EEOC." *Johnson. v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987).

Oka implausibly asserts that the vaccine mandate violated the "status quo" provisions of RLA Section 6 and that ALPA had to sue or file a grievance over this breach. Compl. ¶¶ 42, 114, 117. RLA labor disputes are either major disputes (where a party seeks to modify an existing agreement and the status quo must be maintained pending exhaustion of the RLA's major dispute negotiations process) or minor disputes (where the interpretation of an agreement is at issue and the matter must be resolved in arbitration). Unions may obtain RLA "major dispute" injunctions only when the employer lacks an arguable basis in the CBA for its action; if the CBA arguably justifies the carrier's action, the dispute is "minor" and must be heard in arbitration, not in court. *Consol. Rail Corp. v. Ry. Lab. Execs. Ass'n*, 491 U.S. 299, 307, 312, 320 (1989); *Stephens v. Am. Airlines, Inc.*, 596 F. Supp. 3d 1059, 1061 (N.D. Ill. 2022) (airline's COVID vaccine mandate was minor dispute); *SWAPA v. Sw. Airlines Co.*, 2021 WL 4975010, *11 (N.D. Tex.) (same); *Ne. Ill. Reg'l Commuter Rail Corp. v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers*, 578 F. Supp. 3d 985, 991 (N.D. Ill. 2022) (same for railroad). Here, ALPA rationally (and correctly) concluded that Section 21-K and the practice at United permitted the mandate, so no major dispute injunction was available.

Moreover, the System Board lacked jurisdiction over a grievance alleging an RLA violation. The UPA limits the Board's jurisdiction to "grievances" and disputes arising out of "interpretation or application of any of the terms of this Agreement[.]" App. 59 (§ 18-C). Accordingly, a grievance based on an RLA Section 6 violation would have lacked merit. *Wilson v. Chicago & Nw. Transp. Co.*, 728 F.2d 963, 967 (7th Cir. 1984) (system board authority "limited exclusively to the interpretation or application of existing agreements").

> **b.  Oka Does Not Plausibly Allege that United's Vaccine Mandate Breached the UPA.**

Plaintiffs like Oka who bring a hybrid claim must show both that their employer breached the CBA and their union breached its DFR. *Cunningham v. ALPA*, 769 F.3d 539, 541 (7th Cir. 2014). The union's conduct is immaterial if the employer did not breach the CBA. *See DelCostello v. IBT*, 462 U.S. 151, 164-65 (1983); *Cunningham*, 769 F.3d at 541; *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1303-04 (7th Cir. 1992); *White v. Gen'l Motors Corp.*, 1 F.3d 593, 595 (7th Cir. 1993).

Oka's hybrid DFR claim that United's vaccine mandate breached UPA Section 1-A is baseless. Section 1-A states that ALPA represents United pilots to "negotiate and conclude an agreement with [United] as to hours of labor, wages and other employment conditions[.]" App. 9. The GRP explained that ALPA acted in that capacity by agreeing to allow the vaccine mandate in UPA Section 21-K and the practice under it. United's vaccine mandate thus could not have bypassed ALPA in violation of Section 1-A.[4]

### c. Oka Does Not Plausibly Allege Arbitrary, Discriminatory or Bad-Faith Conduct with Respect to the Vaccine Mandate.

Oka's DFR claim further fails because he does not plausibly allege arbitrary, discriminatory or bad faith conduct. As shown above, ALPA did not act arbitrarily by not pursuing baseless claims that the mandate violated the UPA or RLA. Further, far from "perfunctory" processing of Oka's Status Quo Grievance, the GRP held a two-day hearing and explained its decision in detail. *Reed v. UAW*, 945 F.2d 198, 203 (7th Cir. 1991). With respect to bad faith, Oka alleges no "substantial evidence of fraud, deceitful action or dishonest conduct" by ALPA. *Lockridge*, 403 U.S. at 299 (internal quotations omitted).

---

[4] Oka asserts that an ALPA magazine "editorial" stated that "vaccination requirements are an issue that must be bargained for and ultimately agreed to by each ALPA pilot group[.]" Compl. ¶ 45; App. 3 (¶ 8), 176. However, the referenced article does not refer to any particular pilot group's CBA. At United, ALPA had agreed in Section 21-K to a provision permitting the mandate. App. 65 (UPA § 21-K).

Oka's discrimination claim is equally implausible. First, securing federal funds to support United's payroll was a legitimate union aim. *Wickstrom v. ALPA*, 2023 WL 5720989, *6 (N.D. Ill.); *see Bishop v. ALPA*, 5 F.4th 684, 698 (7th Cir. 2021) (viable DFR claim requires that the union's *sole* motivation be illegitimate). Second, his claim that ALPA "refus[ed] to advocate for unvaccinated pilots who were put on unpaid leave" fails because ALPA had no DFR with respect to that accommodation. Title VII, not the UPA, requires reasonable accommodations and allows individuals to enforce that right. 42 U.S.C. §§ 2000e(j), 2000e-5; *Alexander v. Gardner-Denver*, 415 U.S. 36, 49-52 (1974) (distinguishing between collectively bargained and individual statutory rights); *cf. ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636, 640-42 (7th Cir. 1973) (union's conflicting interests barred service as class representative for Title VII claims seeking reinstatement with seniority). In contrast, the DFR applies only where ALPA acts as the exclusive representative, and Title VII religious accommodations fall outside that role. *Freeman v. Loc. Union No. 135*, 746 F.2d 1316, 1321 (7th Cir. 1984) ("If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding [DFR].").

Oka counters that, in May 2021, the leader of the United pilot group "responded to a member voicing concerns over the emergency use authorization status of the vaccine with a harsh rebuke, advising the member to 'go get a fucking shot and collect $4k or he can STFU.'" Compl. ¶ 53. This proves nothing. The comment, made months before United's vaccine mandate, "does not plausibly allege that, in declining to pursue a grievance challenging the claimed status quo violation, ALPA acted on the basis of hostility toward vaccine objectors." *Wickstrom*, 2023 WL 5720989, *6.

### 2. Oka Does Not State a Plausible DFR Claim Concerning LOA 21-02.

Oka's DFR claims regarding LOA 21-02 are implausible on the merits. He does not:

(1) identify any improperly designated vaccine destination; (2) allege that he would have flown there; or (3) assert that he lost pay, instead claiming that unidentified pilots suffered "financial repercussions[.]" Compl. ¶¶ 49, 70. That does not state a claim. *Iqbal*, 556 U.S. at 678-79 (conclusory allegations do not state a plausible claim); *Wickstrom*, 2023 WL 5720989, *4 (hybrid DFR claim requires showing that employer breached CBA),*7 ("A 'plaintiff cannot recover for a harmless breach of [DFR].'") (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1180 (7th Cir. 1995)).

Nor does Oka plead arbitrary, discriminatory, or bad faith conduct concerning United's alleged breaches of LOA 21-02. He does not claim that he notified ALPA of an improperly-designated vaccine destination, filed grievances over it, or asked ALPA for help. Compl., *passim*. ALPA cannot have acted "wholly irrationally" in such circumstances. *O'Neill*, 499 U.S. at 78; *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 370 (7th Cir. 2003) (no DFR breach where union member did not properly request filing of grievance).

With respect to "bad faith," Oka pleads no facts showing "collusion" and identifies no "substantial evidence of fraud, deceitful action or dishonest conduct" concerning the vaccine destinations. *Lockridge*, 403 U.S. at 299 (internal quotations omitted). Finally, Oka does not plausibly claim discrimination because ALPA's securing extra pay and protecting members' health through LOA 21-02 were not improper motives. *Wickstrom*, 2023 WL 5720989, *6; Exec. Order No. 14042, 86 Fed. Reg. 50985 § 1 (Sept. 9, 2021) (federal vaccine mandate for federal contractors to "decrease the spread of COVID-19" and provide "adequate COVID-19 safeguards to [their] workers"). In any event, no link exists between federal payroll support and United's later vaccine mandate because the CARES Act did not condition funding on workforce vaccination (which was not even available at the time). *See* CARES Act Title IV Subtitle B

11

(3/27/2020) ("Air Carrier Worker Support"), Pub. L. 116-136.[5]

### III.    Oka Does Not Plausibly Allege that ALPA Violated His Title VII Rights.

Title VII bars a union from "exclud[ing] or to expel[ling] from its membership, or otherwise to discriminate against, any individual because of his … religion…." or to "limit, segregate, or classify" its members so as to limit their employment opportunities based on a protected category. 42 U.S.C. § 2000e-2(c)(1), (2). It also prohibits unions from "caus[ing] an employer to discriminate" unlawfully. 42 U.S.C. § 2000e-2(c)(3). Oka broadly alleges that "United and ALPA utterly failed to offer any reasonable accommodation" for his religious beliefs, "failed to engage in the interactive process with him" and did not "perform an individualized assessment of [his] request." Compl. ¶ 84.[6] His claims are legally baseless.

#### A.    ALPA Is Not Liable for the Accommodation Offered by United.

Oka correctly admits that the religious accommodation requirement applies primarily to employers, not unions. Compl. ¶ 82; see 42 U.S.C. § 2000e(j) (defining "religion" as "employer" (not union) being "unable to reasonably accommodate" employee's "religious observance or practice without undue hardship on the conduct of the employer's business"). Thus, EEOC regulations discussing such accommodations apply to unions only when they are empowered to offer one. See 29 C.F.R. § 1605.2 (c)(1) ("After an employee or prospective employee notifies

---

[5] Oka claims that United also violated LOA 21-02 by "demanding employees to substantiate their vaccine exemption requests prior to the LOA's conclusion." Compl. ¶ 50. At best, this would plead a harmless, technical violation because: (1) the LOA expired, and the mandate began, on September 27, 2021; and (2) Oka substantiated his request and received a religious accommodation (just not the one that he desired). Id. ¶¶ 51, 63-64.

[6] Such claims are a type of disparate treatment, not "an independent legal claim." *Leigh v. Artis-Naples, Inc.*, 2022 WL 18027780, *4 (M.D. Fla.); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 789 (2015) ("The Court today rightly puts to rest the notion that Title VII creates a freestanding religious-accommodation claim.") (Thomas, J., concurring in part); *Privler v. CSX Transp., Inc.*, 2021 WL 3603334, *12 n.10 (N.D.N.Y.).

the employer or labor organization of his or her need for a religious accommodation, the employer or labor organization has an obligation to reasonably accommodate the individual's religious practices"); 29 C.F.R. § 1605.2 (d)(2) (religious objection to paying agency fees to union accommodated by permitting donation to charity); *see also TWA v. Hardison*, 432 U.S. 63 (1977) (reasonable accommodation did not require alteration of collectively-bargained scheduling rules); *Killebrew v. Loc. Union 1683 of AFSCME*, 651 F. Supp. 95, 100 (W.D. Ky. 1986) (union not liable when it did not "purposely act or refuse to act so as to prevent or obstruct the [employer] from reaching [a religious] accommodation").

Oka does not allege that ALPA: (1) had authority to offer a different accommodation than United; (2) prevented United from offering a different accommodation; or (3) directed United to offer the unpaid leave accommodation. 42 U.S.C. § 2000e-2(c)(3) (union shall not "cause or attempt to cause an employer to discriminate"). Rather, his allegations concerning the vaccine mandate are directed at United, not ALPA. Compl. ¶¶ 29-36. Oka similarly claims that United, not ALPA, received his accommodation request, asked questions about it, and granted it by providing unpaid leave. *Id.* ¶¶ 61-67. And while Oka suggests that United should have let him continue flying unvaccinated, he does not allege that ALPA had a role in United's denial of any such request.

**B.      Title VII Did Not Require ALPA to Advocate for a Different Accommodation.**

Oka claims that ALPA refused to represent pilots with respect to United's accommodation of unpaid leave for religious objectors. *Id.* ¶¶ 115, 123. That claim fails because neither Title VII nor its regulations impose such a duty on ALPA. Unions do not negotiate with employers for such individual statutory rights and typically do not enforce them through the grievance process. *See Gardner-Denver*, 415 U.S. at 49-52; *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 262, 273 (2009); *ALSSA*, 490 F.2d at 641 ("Title VII, unlike the National Labor Relations Act and [RLA],

13

does not create nor necessarily recognize powers of exclusive representation."). As a result, "[e]xcept for the area of collective bargaining and its necessary incidents, the union has no unique authority to compromise" members' "rights" because "[a]n individual who claims to have been the victim of unlawful discrimination has the right to redress individually." *ALSSA*, 490 F.2d at 641-42. Unions therefore are not employees' exclusive representatives with respect to such rights and lack a duty to act as their agents. *President v. Ill. Bell Tel. Co.*, 865 F. Supp. 1279, 1291 (N.D. Ill. 1994) ("Where such a Title VII claim is predicated on a breach of the duty to represent, a prima facie showing involves both a breach of that duty and proof that "'there was some indication that the Union's actions were motivated by discriminatory animus'"") (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 868 (7th Cir.1985)). In other words, ALPA protects Oka's interests as part of the pilot collective under the UPA, not Title VII, and did not discriminate by staying out of the Oka-United dispute over United's accommodation.

### C. Title VII Did Not Require ALPA to Oppose United's Mandate.

Oka arguably asserts that ALPA violated Title VII by not supporting his Status Quo Grievance. But, as noted above, unions are potentially liable under Title VII only if they "cause or attempt to cause an employer to discriminate." 42 U.S.C. § 2000e-2(c)(3). If a union "merely fails to effectuate changes in the workplace [to redress employer's discriminatory conduct] … the union is not guilty of discrimination, though the company is." *EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659-61 (7th Cir. 2003). As the Seventh Circuit explained, imposing such a duty "would make for factually messy cases because the union's power is so much more limited than the employer's when it comes to making changes in personnel or work rules." *Id.* at 660-61. *See also Okoro v. Cook Cnty. Health & Hosp. Sys.*, 2022 WL 1266432, *5 (N.D. Ill.) (union inaction is discriminatory only if it "would have taken action for an employee of a different race than the plaintiff"); *Martin v. Loc. 1513 & Dist. 118 IAM*, 859 F.2d 581, 584

(8th Cir 1988) (Title VII liability requires a case "'much stronger than one of mere acquiescence'") (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667 (1987)).

IV.     **Oka Fails to State a Claim Under Kentucky Law.**

Oka's claim under the KCRA, K.R.S. §344.010, *et seq.*, appears to be directed solely against United. Compl. ¶¶ 91-108. He fails to state such a state law claim against ALPA. "[D]iscrimination claims brought under the KCRA are analyzed the same way as those brought under Title VII." *Beatty v. Frito-Lay, Inc.*, 429 F. Supp. 3d 342, 347 (E.D. Ky. 2019); *Irvin v. Aubrey*, 92 S.W.3d 87, 90 (Ky. Ct. App. 2001) (applying Title VII religious accommodation analysis to KCRA claim). Since Oka does not plausibly allege that ALPA violated Title VII, he does not state a claim under the KCRA.

Oka also fails to state a KCRA claim because the statute does not apply to discrimination allegedly occurring out of state. "[T]he [KCRA] does not have extraterritorial application." *Union Underwear Co. v. Barnhart,* 50 S.W.3d 188, 193 (Ky. 2001). *See also Hamade v. Valiant Gov't Servs., LLC*, 2019 WL 1410904 (W.D. Ky.) (plaintiff did not state KCRA claim because he was employed outside Kentucky and alleged discriminatory conduct occurred outside Kentucky).

Here, Oka's only allegation concerning Kentucky is that he lives there. Compl. ¶ 17. He admits that United is headquartered in Illinois and ALPA in Virginia, and no facts support his bald claim that "substantial parts of the acts or omissions giving rise to the claim occurred" in Kentucky. *Id.* ¶¶ 17-19, 23, *passim*. He fails to plausibly allege that the claimed discrimination occurred in Kentucky and does not state a KCRA claim.

**CONCLUSION**

For the reasons stated above, the Court should grant the motion and dismiss the claims against ALPA.

15

Dated: December 18, 2023

Respectfully submitted,

By: */s/ Joshua J. Ellison*

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION,
  INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*