**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH JOHN OKA** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 23 C 15793** |
| ) | |
| **AIR LINE PILOTS ASSOCIATION,** ) | |
| **INTERNATIONAL and UNITED** ) | |
| **AIRLINES, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Joseph Oka has filed suit against his employer, United Airlines, Inc., and his

union, Air Line Pilots Association International (ALPA), for violations of Title VII of the

Civil Rights Act of 1964. He also alleges that ALPA breached its duty of fair

representation under the Railway Labor Act (RLA). United and ALPA have moved to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state

a claim. For the following reasons, the Court grants the defendants' motions in part and

denies the motions in part.

**Background**

Oka's complaint spans seventy-eight pages and is replete with minute details,

unexplained airline industry terms, and undefined abbreviations. The Court therefore

does its best under the circumstances to summarize the core allegations from Oka's

amended complaint for the purposes of ruling on the motions to dismiss.

A.    **United's COVID-19 vaccination policy**

Oka is a pilot employed by United.  He is a member of ALPA, a national labor union that serves as his certified collective bargaining representative.  On August 6, 2021, United announced that all employees would be required to be vaccinated against COVID-19 unless they were granted a medical or religious accommodation.  The deadline for accommodation requests was August 31, 2021; the deadline for submitting proof of vaccination was September 27, 2021.  United terminated employees who did not submit proof of vaccination unless they had been granted a religious or medical accommodation.

On August 25, 2021, Oka submitted a request for an accommodation based on religious objections to receiving the COVID-19 vaccine.  United granted the request.  Oka alleges, however, that the "accommodation" that he was offered was in fact an "indefinite, unprotected, and unpaid leave of absence with no benefits."  Am. Compl. ¶ 81.  Oka alleges that his accommodation went into effect on September 9, 2021 and that he "lost access to all compensation and benefits provided by his position."  *Id.* ¶ 2. Specifically, Oka alleges that:

> he was left with no pay, no associated retirement pay, no access to sick leave pay, no company paid medical or other insurance benefits, no furlough protection benefits, no minimum pay protection guarantees, no vacation pay pro rata elimination, and no ability to access employee health savings plans which contained their contributions for an indefinite amount of time.  Furthermore, Plaintiff's health care cost soared 400 percent to $2,960 per month, and he was forced to find a less expensive plan with lower benefits.

*Id.* ¶ 83.

Oka further alleges that "United's policies were applied disparately towards those who sought religious exemptions."  *Id.* ¶ 85.  Specifically, Oka alleges that, unlike

unvaccinated pilots granted religious accommodations, unvaccinated pilots granted medical accommodations "kept all their benefits, including the company-paid portion of health care, pass travel privileges, use of sick leave with retirement pay, vacation pay with retirement pay, sick leave and vacation accrual – all the benefits of an active employee except wages." *Id.* ¶ 88. In addition, Oka alleges that medically accommodated pilots were "given access to continued pay via their leave Sick Leave (SL) bank . . . and could use 50–90 hours of paid leave each month by phoning in a request." *Id.* ¶ 89. He alleges that, although he "had over 688 hours of sick leave in his bank representing $165,000," the terms of his religious accommodation did not authorize him to access these benefits. *Id.*

Oka also alleges that United imposed harsher restrictions on pilots with religion-based accommodations regarding their travel privileges. Although neither medically nor religiously accommodated pilots were permitted to work unvaccinated, medically accommodated pilots "could exercise their travel privileges" as passengers, but "those that sought religious exemptions rather than medical had all their travel privileges revoked." *Id.* ¶ 92. "Furthermore, only religiously 'accommodated' employees had their family pass travel privileges and flying buddy/enrolled friend passes eliminated." *Id.* ¶ 93.

In addition, Oka alleges that United implemented additional restrictions solely for religiously accommodated pilots. For example, "if you were near retirement, employees could not retire from the accommodation with retirement benefits" and "employees would only be paid for their accrued vacation upon separation from the company, which could have been potentially years away." *Id.* ¶ 95.

**B.    ALPA's response**

Oka alleges that, in response to United's vaccination policy and attendant accommodation policy, "there was virtually no pushback from Defendant ALPA despite it being the sole collective bargaining representative for United pilots." *Id.* ¶ 98.  ALPA took the position that United's vaccination requirement was a "personnel policy" and therefore was "allowable under . . . Section 21-k [of the collective bargaining agreement] and akin to the [preexisting] Yellow Fever vaccine policy at United." *Id.* ¶ 119.  Oka alleges that ALPA therefore refused to challenge the policy by, for example, suing to enjoin the mandatory vaccination requirement or pursuing a grievance.  In addition to ALPA's alleged failure to challenge the mandatory vaccination policy, Oka alleges that the union actively discouraged its members from challenging the policy and withdrew virtually all support for members that nevertheless attempted to do so.  He contends that ALPA handled member-filed grievances in a perfunctory and at times dishonest manner.

**C.    Oka's first grievance (the "2021 grievance")**

On August 24, 2021, Oka filed a grievance alleging that United's mandatory COVID-19 vaccination requirement violated section six of the Railway Labor Act, which requires parties engaged in collective bargaining to maintain the "status quo" until an agreement is reached.  On September 22, 2021, Oka amended this grievance, which he renamed the "Group Contract Grievance." *Id.* ¶ 169.  The Group Contract Grievance alleged "over fifteen violations of the contract created by the [COVID-19 vaccine] mandate and so-called 'accommodation' process." *Id.* ¶ 169.  The grievance was denied.

Oka pursued an appeal of the denied grievance to the "System Board of Adjustments," which is an arbitral body comprised of "voting members from each side of an argument and a mutually agreed upon neutral participant."  *Id.* ¶ 192.  In order for the System Board of Adjustments to hear the appeal, however, Oka was required to present his grievance to ALPA's "Grievance Review Panel."  *Id.* ¶ 191.  The Grievance Review Panel is an "ALPA board consisting of three pilots selected by [ALPA leadership]."  *Id.*  The Grievance Review Panel declined to appeal Oka's grievance to the System Board of Adjustments.  Oka alleges that the denial was unfair because the Panel did not consider all of the alleged contract violations that he had included in his amended grievance.

**D.    Oka's return to work and second grievance (the "2022 grievance")**

United ultimately permitted Oka to return from unpaid leave approximately five months later in March 2022.  Because Oka still was not vaccinated, however, he was informed that there was a "list of approximately 30 destinations to which [he] could not fly."  *Id.* ¶ 222.  At United, pilots are assigned to flight routes (i.e. "trips") based on a complex bidding process that takes into account numerous factors such as the pilot's rank, seniority, the destination/route that the pilot bids on, the hub where the pilot is based, and so forth.  Although the complaint's allegations are difficult to parse due to the technical jargon Oka has employed, the Court understands Oka to allege that he either had to take burdensome measures to avoid being assigned to a prohibited destination or, if he failed to avoid the assignment, have the trip "dropped" from his schedule without pay.  *Id.* ¶ 228. The Court also understands Oka to allege that, by barring him from flying to certain destinations, United in effect prevented him from

5

gaining an otherwise scheduled promotion to the rank of Captain. *See id.* ¶¶ 223, 226, 232.

Oka alleges that he wrote to ALPA in April 2022 regarding these issues but did not receive an adequate response. Approximately one month later, Oka "turned to filing a second grievance regarding the trip dropping and forced downgrade policy that created the hardship coercing him to surrender his Captain upgrade." *Id.* ¶ 236. Oka alleges that ALPA did not act on his grievance until he filed an EEOC complaint against the union. At that point, approximately three months after Oka filed his grievance, ALPA filed a grievance on his behalf.

Again, the allegations at this point in the complaint are difficult to parse due to Oka's overuse of non-standard terms and acronyms, often without explanation. Nevertheless, the Court understands Oka to assert that, while his 2022 forced downgrade grievance was pending, ALPA filed a separate grievance "on behalf of 'accommodated' pilots whose bid preferences were manipulated by [United]." *Id.* ¶ 244. ALPA and United subsequently reached a settlement regarding this grievance. Oka alleges, however, that this settlement "resulted in a carve out for religiously and medically 'accommodated' pilots to be isolated from the [collective bargaining agreement] and become subject again to indefinite unpaid leave as an accommodation." *Id.* The parties refer to this settlement as the "carveout settlement."

In December 2022, United apparently addressed at least some aspects of Oka's 2022 grievance. *See id.* ¶ 252. Oka alleges, however, that "the threat from the forced downgrade policy still looms over" him. *Id.* On June 6, 2023, Oka "inquired if his [2022] grievance would be pressed [by ALPA] to the System Board and was told it was

'unlikely.'" *Id.* ¶ 253. At some point, Oka accepted the promotion to Captain. Following his promotion, an ALPA representative asked Oka "to clarify for the ALPA grievance committee and ALPA attorneys what parts of his grievance remained by accepting his Captain bid." *Id.* ¶ 260. Oka alleges that such questions were a part of an ongoing bad-faith effort by ALPA to get him to drop his grievance. Oka asserts that, although he ultimately received his promotion, the grievance still represented "monetary damages of more than $200,000 of Captain differential back pay." *Id.* ¶ 263.

Since September 2023, Oka "has inquired several times since September 2023 if ALPA intends to press his grievance to the System Board and ALPA's responses have been replete with fallacies and misrepresentations." *Id.* ¶ 277. Oka alleges that "ALPA intends to not press [his] grievance to the System Board to run out the . . . two-year period during which grievances can be selected for mediation, at which point [his] grievance will simply be automatically withdrawn." *Id.* ¶ 398.

On October 3, 2023, Oka filed this suit. He filed an amended complaint on January 30, 2024.

**A.    United**

**1.    Shotgun pleading**

United first argues that the Court should dismiss the claims against it because Oka's amended complaint is a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8(a)(2), which requires a plaintiff's complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." United argues that the fact that Oka "incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or

cause of action, appearing in a count's heading," violates Rule 8(a)(2) by failing to give United notice of the claims against it. United's Mot. to Dismiss at 4 (quoting *SEC v. Winemaster*, No. 19 C 4843, 2021 WL 1172773, at *14 (N.D. Ill. March 29, 2021)).

Although the Court agrees that the amended complaint is excessively unwieldy, repetitive, and at times difficult to parse, it is not so unintelligible that United cannot understand the basic contours of Oka's claims. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) ("Where a complaint does not comply with Rule 8's mandate of 'a short and plain statement of the claim' but nevertheless puts the defendant on notice of the plaintiff's claims, dismissal is inappropriate 'merely because of the presence of superfluous matter.'" (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001))). The Court therefore declines to dismiss Oka's claims on this basis.

### 2. RLA preclusion

United next argues that the Court must dismiss Oka's Title VII discrimination claims because they are precluded by the RLA.[1] "Congress passed the RLA, which governs railroads and airlines, to provide for 'the prompt and orderly settlement' of labor disputes in those industries." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (quoting 45 U.S.C. § 151(a)). "To that end, the Act requires that so-called 'minor

---

[1] United frames its RLA preclusion argument as a question of subject-matter jurisdiction. But the fact that both parties recognize that there are equitable exceptions to the RLA's mandatory arbitration requirement implies that it is not jurisdictional. *See Wickstrom v. Air Line Pilots Ass'n, Int'l*, No. 23 C 2631, 2023 WL 5720989, at *3 (N.D. Ill. Sept. 5, 2023) (Kennelly, J.). The distinction is not material to the outcome of the issue here. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) ("The distinction between the two grounds for dismissal [Rule 12(b)(1) and Rule 12(b)(6)] is inconsequential in this case, where waiver is not an issue because the defendant argued RLA preclusion at every stage, but it could matter in others."). The Court will thus consider United's motion for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction as a motion under Rule 12(b)(6) for failure to state a claim.

disputes' be resolved in arbitration before an adjustment board established by the employer and union rather than in court." *Id.* (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)). The RLA defines "minor disputes," in relevant part, as "disputes between an employee . . . and a carrier . . . growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153(i). "In other words, minor disputes are those 'grounded in' a collective bargaining agreement." *Carlson*, 758 F.3d at 831–32.

In United's view, the gravamen of Oka's Title VII religious discrimination claim is a contention that United provided better benefits to pilots granted medical accommodations than to pilots granted religious accommodations. United thus argues that Oka "will ultimately have to demonstrate that the benefits provided to medically accommodated pilots were not allowable under the [collective bargaining agreement] and that instead, United discriminatorily decided to provide more favorable benefits to them than to religiously accommodated pilots." United's Mot. to Dismiss at 7. United adds that it "will assert that the legitimate, nondiscriminatory reason for the difference in treatment between the two groups of accommodated pilots is based on the terms of the [collective bargaining agreement]." *Id.* In response, Oka argues that United "cannot evade liability . . . for discriminatory practices" by labeling them as "employment policy." Pl.'s Resp. to United's Mot. to Dismiss at 4. He also argues that, even if his disparate treatment claim is considered a minor dispute, he qualifies for exceptions to the RLA's mandatory arbitration requirement.

The Court concludes that the RLA does not preclude Oka's Title VII religious discrimination claim. The Seventh Circuit has emphasized that the RLA does not

automatically "exclud[e] a class of employees from statutory protections against employment discrimination and retaliation." *Carlson*, 758 F.3d at 832. Thus, the "general rule" is that "the RLA does not require arbitration of claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Id.* at 833. "[A] claim is independent if it cannot be 'conclusively resolved' by interpreting the collective bargaining agreement." *Id.* at 832 (quoting *Hawaiian Airlines, Inc.*, 512 U.S. at 252).

Oka's claim of religious discrimination cannot be "conclusively resolved" by interpreting the collective bargaining agreement's provisions regarding medical leave and/or personal leave. Even if the collective bargaining agreement is interpreted in the manner that United asserts—i.e., that all of the benefits that medically accommodated pilots received were, in fact, provided for by the collective bargaining agreement—that does not resolve the issue of whether United acted in an inappropriately discriminatory manner by not providing those same benefits to pilots who objected to the COVID-19 vaccination requirement on religious grounds. The Court understands Oka to argue in large part that United's decision to accommodate him by placing him on "personal leave" instead of placing him on "medical leave" (or by offering both medical and religious objectors some other accommodation altogether) was unlawfully discriminatory because it intentionally treated unvaccinated pilots differently depending on the reason for their objection. This claim cannot conclusively be resolved by United's argument that, once the allegedly discriminatory decision to place pilots on personal and/or medical leave was made, it followed the terms of the collective bargaining agreement regarding what benefits they would be entitled to. "An employer cannot ensure the

preclusion of a plaintiff's claim merely by asserting CBA-based defenses to what is essentially a non-CBA-based claim." *Carlson*, 758 F.3d at 833. Although Oka alleges that United violated terms of the collective bargaining agreement in the course of its discrimination against him, determination of whether United in fact committed these violations is not dispositive of his Title VII religious discrimination claim. *See id.* ("Claims are not precluded just 'because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense.'" (quoting *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 350 n.21 (5th Cir. 2008))).

Because the Court has concluded that Oka's claims are not precluded by the RLA, it declines to reach the parties' arguments regarding exceptions to the RLA's mandatory arbitration requirement.

### 3. Title VII religious discrimination claim

"Title VII makes it unlawful for an employer to 'fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1008 (7th Cir. 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)). Oka alleges three separate Title VII counts, which he labels "Religious Discrimination – United's Disparate Treatment" (count 1); "Religious Discrimination – United's Failure to Accommodate" (count 2); and "Religious Discrimination – United's Retaliation" (count 3). The Court notes that the Supreme Court has held that a claim that an employer has failed to accommodate an employee's religious beliefs is a type of disparate treatment claim.

*See EEOC v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 775 (2015). Nevertheless, Oka's complaint and the parties' subsequent filings make clear that he is advancing two distinct theories of religious discrimination. First, he alleges that United engaged in intentional discrimination because it intentionally treated Oka worse than other vaccine objectors *because* his objections were religious in nature. Second, Oka alleges that United failed to reasonably accommodate his religious beliefs in opposition to receiving the COVID-19 vaccine. Thus, for simplicity, the Court—like the parties—will refer to the first theory as Oka's "disparate treatment" or "intentional discrimination" claim and the second theory as Oka's "failure-to-accommodate claim."

Turning first to Oka's intentional discrimination claim, Oka must show that his religion was "a 'motivating factor' in an employment decision." *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 773. United argues that he "cannot plausibly plead United instituted a requirement for its *entire* workforce to receive the vaccine (absent an approved reasonable accommodation) with the specific intent to discriminate against *his* alleged religious beliefs." United's Mot. to Dismiss at 9. It emphasizes that "[i]n the COVID-19 context, courts have regularly dismissed Title VII claims conflating discrimination because of religion and differentiation based on vaccination status." United contends that Oka "has, at most, alleged that unvaccinated workers were treated worse than vaccinated workers, and as such, he has failed to state a disparate treatment religious discrimination claim." United's Mot to Dismiss at 11.

The Court disagrees. United's argument relies on the premise that it treated all unvaccinated pilots equally. But that is not what Oka has alleged. He asserts that United intentionally implemented a system that imposed adverse consequences on

12

pilots not just for declining to receive the COVID-19 vaccination, but for declining to do so for *religious* reasons as opposed to medical reasons. Taking his allegations as true, as the Court must on a motion to dismiss for failure to state a claim, United intentionally differentiated between religious and non-religious requests when determining whether pilots would receive sick leave, health benefits, travel passes, and other privileges. Oka was therefore subject to an adverse action—the loss of benefits and privileges with substantial monetary value—that he contends was motivated in part by the religious reason underlying his unvaccinated status. That is sufficient to state a claim for intentional discrimination on the basis of religion at the motion to dismiss stage. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("To survive screening or a motion to dismiss, a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics.").

United also briefly contends that Oka cannot state a claim for religious discrimination because, "with respect to the implementation of its COVID-19 vaccine policy, United treated [him] **more favorably** than other employees who remained unvaccinated and did not seek or qualify for a religious accommodation." United's Mot. to Dismiss at 11. But it is no defense to a Title VII claim to assert that a protected class was not the employer's least favored group. The Court therefore denies United's motion to dismiss Oka's intentional discrimination claim (count 1).

### 4. Title VII failure-to-accommodate claim

United also argues that the Court should dismiss Oka's failure-to-accommodate claim. Title VII defines the term "religion" to include "all aspects of religious observance

and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). To make out a prima facie case on a Title VII failure-to-accommodate claim, a plaintiff must plausibly allege that "(1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment." *Passarella*, 108 F.4th at 1009. "At that point the employer can invoke the affirmative defense that accommodation would result in 'undue hardship' or a 'substantial' burden in the 'overall context' of the business." *Id.* (quoting *Groff v. DeJoy*, 600 U.S. 447, 468 (2023)).

United argues that because it "granted [Oka's] religious accommodation request, provided him with temporary leave, and returned him to work within months," it "fulfilled its obligations under Title VII by eliminating any purported conflict between Plaintiff's alleged religious beliefs and its COVID-19 vaccine policy." United's Mot. to Dismiss at 12. An employer's obligation under Title VII is to *reasonably* accommodate an employee's religious practice unless it can show that doing so would subject it to undue hardship. *See* 42 U.S.C. § 2000e(j). Oka alleges that United withheld his pay, health benefits, and numerous other privileges for months; that is plainly sufficient to plausibly allege that United's proffered accommodation was not reasonable. United also argues that Oka has not plausibly alleged that it acted with the motive of avoiding the need to accommodate his religious practice. But "[Oka] has plausibly alleged that United placed

him on unpaid leave without benefits because of his 'religious observance or practice' of refusing the COVID-19 vaccination.  That is all that is necessary in terms of 'motive' for a failure-to-accommodate claim."  *Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 3848553, at *3 (N.D. Ill. Aug. 16, 2024) (quoting *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), *vacated on other grounds*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023)).  The Court declines to dismiss the failure-to-accommodate claim (count 2).

### 5.    Title VII retaliation claim

Finally, United argues that Oka has failed to state a claim for retaliation.  To state a claim for retaliation under Title VII, a plaintiff must plausibly allege: "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action.*" Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)).  To satisfy the causation requirement for Title VII retaliation, the plaintiff must show that his protected activity was the but-for cause of the employer's adverse action.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Although Oka has plausibly alleged that United singled out religious vaccine objectors for worse treatment than medical vaccine objectors, he has not plausibly alleged that his engagement in any protected activity under Title VII was the but-for cause of any adverse action against him.  First, nothing in Oka's complaint suggests that United singled him out for worse treatment because he filed an EEOC complaint, complained about its treatment of religious objectors, or engaged in any other possible

15

form of protected activity. That leaves only his request for a religious accommodation. A request for a religious accommodation certainly qualifies as protected activity under Title VII. But courts have consistently explained that a defendant's failure to reasonably accommodate does not constitute an adverse action enabling a plaintiff to maintain a retaliation claim. *See Kinney v. St. Mary's Health, Inc.*, No. 20 C 226, 2022 WL 4745259, at *8 (S.D. Ind. Aug. 31, 2022)*; see also Moore-Fotso v. Bd. of Ed. of City of Chi.*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) (discussing this issue in the analogous context of the Americans With Disabilities Act). Otherwise, every defendant who declined an employee's accommodation request—rightly or wrongly—would be guilty of retaliation. *See Moore-Fotso*, 211 F. Supp. 3d at 1038 ("[S]uch allegations are 'circular' because 'the denial of such requests can hardly be considered unlawful retaliation for the act of requesting them.' (quoting *Sheahan v. Dart*, 2015 WL 1915246, at *6 (N.D. Ill. Apr. 23, 2015))). The adverse actions that Oka points to—such as the unpaid leave, restricting him from flying to certain destinations, and so forth—are better characterized as examples of United's failure to reasonably accommodate Oka's religious beliefs, not as retaliatory actions for making that request. This is perhaps best illustrated by the fact that nothing in the complaint suggests that Oka would have been better off if he *hadn't* requested an accommodation, given that unvaccinated pilots who did not make such requests were terminated outright. The Court therefore grants United's motion to dismiss Oka's retaliation claim (count 3). *See Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018) (affirming the district court's grant of summary judgment for the defendant on a plaintiff's retaliation claim on the basis that the plaintiff was "really alleging a discrimination or accommodation claim rather than a true retaliation claim").

B.     **ALPA**

Oka also has brought several claims against ALPA arising out of the union's response to United's COVID-19 vaccination policy.  The Court will first address Oka's claims that ALPA breached its duty of fair representation under the RLA and then address his claims that ALPA violated Title VII.

1.     **Duty of fair representation claim**

Under the RLA, "when a union serves as the exclusive bargaining agent for a group of employees, it assumes a duty of fair representation."  *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018).  "A union breaches the duty of fair representation if its actions are (1) arbitrary, (2) discriminatory, or (3) made in bad faith." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).

a.     **Statute of limitations**

ALPA argues that "the six-month limitations period [for duty of fair representation claims] bars most of [Oka's] DFR claims, as the principal acts challenged here occurred more than six months before his October 2023 suit."  ALPA's Mot. to Dismiss at 1.[2] ALPA argues that Oka's only timely DFR claim arises from ALPA's handling of his 2022 grievance, which the parties refer to as the "forced downgrade grievance."

In response, Oka does not dispute ALPA's contention that there is a six-month

---

[2] Specifically, ALPA argues that Oka's DFR claims based on the following are untimely: "(1) ALPA's March 2021 agreement to LOA 21-02; (2) ALPA not challenging United's August 2021 vaccine mandate; (3) Oka starting unpaid leave in November 2021; (4) ALPA not supporting his 2021 Status Quo Grievance challenging the mandate, including the GRP's March 2022 refusal to advance that Grievance to the System Board; (5) ALPA not supporting his fall 2021 complaints about United's reasonable accommodation process; and (6) the March 22, 2023, Carveout Settlement."  ALPA's Reply at 3.

limitations period or that most of his DFR claims accrued outside of that window.[3]
Rather, he argues that two DFR claims accrued within the six-month limitations period:
(1) his claim arising from ALPA's handling of his 2022 forced downgrade grievance, and
(2) his claim arising from ALPA's agreement to what the parties refer to as the "RAP
carveout settlement" in March 2023. With respect to the remainder of his DFR claims,
Oka argues that these are nevertheless timely despite their accrual date because the
limitations period was tolled during the pendency of his EEOC charges.

Turning first to Oka's tolling argument, he does not cite to any case in which a
court has suggested, much less concluded, that the "statute of limitations [for a DFR
claim] against the union did not begin to accrue until the EEOC . . . issued a Notice of
Right to Sue." Pl.'s Resp. to ALPA's Mot. to Dismiss at 7. Instead, he cites to two
district court cases for the proposition that "courts . . . generally incorporate the duty of
fair representation as one of the elements of the alleged Title VII violation." *Id.* at 6
(quoting *Agosto v. Correctional Officers Benev. Ass'n*, 107 F. Supp. 2d 294, 304
(S.D.N.Y. 2000) and citing *Young-Smith v. Bayer Health Care, LLC*, 788 F. Supp. 2d
792, 802 (N.D. Ind. 2011)). There are two problems with Oka's argument. First,
contrary to the proposition quoted by Oka, the Seventh Circuit has stated that a breach

---

[3] Oka states, without any further explanation, that his claims "are timely because they
arise from ALPA's most recent failure to press Mr. Oka's forced downgrade grievance
. . . ." Pl.'s Resp. to ALPA's Mot. to Dismiss at 5. This statement is ambiguous at best,
but to the extent that Oka intends to assert that *all* of his DFR claims are timely because
they somehow "arise from ALPA's most recent failure," that argument is forfeited
because he has not articulated how that is so, much less supported this theory with any
citation to relevant authority. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-
Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped
arguments are waived, as are arguments unsupported by legal authority.").

of the duty of fair representation is not a prerequisite for a claim against a union under Title VII. *See Green v. Am. Fed'n of Tchrs.*, 740 F.3d 1104, 1105–06 (7th Cir. 2014). Second, Oka does not explain (and the Court does not see) why any alleged overlap between his Title VII claims and his RLA duty-of-fair-representation claims in this case should have any effect on the different limitations periods established by those statutes. Finally, Oka does not respond to ALPA's argument that tolling under these circumstances is contrary to Seventh Circuit precedent. *See Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987) (holding that a plaintiff's duty-of-fair-representation claim under the Labor Management Relations Act was untimely because "the [DFR claim], based in part on rights under the collective bargaining agreement, is independent of a claim under Title VII, and thus the time for filing a [DFR claim] is not tolled by pursuing a Title VII claim with the EEOC"). For these reasons, the Court concludes that Oka's Title VII charges did not toll the limitations period for his DFR claims.

That leaves the DFR claims arising from the 2022 forced downgrade grievance and the 2023 carveout settlement. The parties agree that Oka's DFR claim arising from the 2022 forced downgrade grievance is timely (though ALPA argues that there are exhaustion issues, which the Court addresses below). But ALPA argues that Oka's DFR claim regarding ALPA's agreement to the 2023 carveout settlement is untimely because the settlement was reached on March 22, 2023, which was over six months before Oka filed this action on October 3, 2023.[4] Oka responds that although the

---

[4] The Court notes that, given that Oka alleges that the carveout settlement negatively affected his pending 2022 grievance, it is not clear whether he in fact is asserting a distinct DFR "claim" based on ALPA's carveout settlement, or whether the carveout

settlement was reached on March 22, 2023, he "was not made aware of its devastating implications until June 22, 2023," and thus the accrual date for his DFR claim should be June 22 rather than March 22. Pl.'s Resp. to ALPA's Mot. to Dismiss at 6. ALPA counters that, even assuming that Oka's June 22 accrual date is correct, his claim is still untimely because he alleged no facts relating to the settlement until he filed his amended complaint on January 30, 2024.

The limitations period for a DFR claim under the RLA "runs not from the time of the injury itself, but instead from when the plaintiff 'discovers, or in the exercise of reasonable diligence should have the discovered, the acts constituting the alleged [violation].'" *Pisut v. United Transp. Union*, 140 F. Supp. 3d 711, 719 (N.D. Ill. 2015) (quoting *Christiansen v. APV Crepaco, Inc.,* 178 F.3d 910, 914 (7th Cir. 1999)). The Court cannot conclude at this early stage what Oka knew or should have known regarding the settlement in March 2023 versus June 2023. Such factual determinations are generally inappropriate at the motion to dismiss stage. *Signey Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations" and because "these defenses typically turn on facts not before the court at that stage in the proceedings." (internal quotation marks and citation omitted)).

ALPA argues that the claim is untimely even if the accrual date is June 22, 2023 because Oka did not add the claim based on the carveout settlement until he filed his

---

settlement is better characterized as further evidence on ALPA's breach of its DFR regarding Oka's forced downgrade grievance. But Oka does not raise the issue, so the Court treats it as a separate claim as the parties do in their briefing.

amended complaint on January 30, 2023. The parties dispute whether the carveout settlement claim "relates back" to the filing of Oka's original complaint. "Where a party seeks to amend a pleading after the statute of limitations has run, he must turn to the relation-back provision of Rule 15(c), which allows such amendment if it 'asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Coleman v. United States*, 79 F.4th 822, 827 (7th Cir. 2023) (quoting Fed. R. Civ. P. 15(c)(1)(B)). ALPA argues that Oka's allegations regarding the carveout settlement do not relate back because the original complaint's allegations "ended in March 2022 and did not mention the March 2023 Carveout settlement." ALPA's Mot. to Dismiss at 6 n.2. In response, Oka cites only two paragraphs of his original complaint. *See* Pl.'s Resp. to ALPA's Mot. to Dismiss at 6 n.1 (citing Compl. ¶¶ 57, 72). These paragraphs, however, relate to United's actions designating certain locations as requiring pilots to be vaccinated. They make no mention of ALPA, nor do they discuss any grievances filed by Oka or others regarding United's conduct. The Court cannot piece together from this sparse argument and citation how Oka's DFR claim regarding the carveout settlement arises out of the same "conduct, transaction, or occurrence" alleged in the original complaint. The Court therefore concludes that the DFR claim based on the 2023 settlement does not relate back to the original complaint and is therefore time-barred.

### b. Exhaustion

ALPA next argues that the Court must dismiss Oka's DFR claim based on his 2022 forced downgrade grievance because that grievance currently "awaits arbitration." ALPA's Mot. to Dismiss at 6–7. Oka responds that exhaustion is not required where

union hostility makes exhaustion under the RLA futile.

As an initial matter, it is not clear to the Court that there is in fact an "exhaustion requirement" with respect to Oka's DFR claim. *See, e.g.*, *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 782 F.2d 674, 685 (7th Cir. 1986) ("A fair representation claim, regardless of its factual context, is by definition a 'non-minor' dispute since it involves the implied statutory relationship between a union and those it represents rather than the actual contractual relationship over which the [arbitrator] has jurisdiction."). That point aside (because Oka has not raised it), the Court concludes that there are factual disputes concerning the status of Oka's 2022 grievance that preclude granting ALPA's motion to dismiss on exhaustion grounds. *See* Am. Compl. ¶ 277 ("Plaintiff has inquired several times since September 2023 if ALPA intends to press his grievance to the System Board and ALPA's responses have been replete with fallacies and misrepresentations."). Oka has alleged that ALPA has, at various times, delayed, undermined, and/or failed to support his grievance and that there is evidence that ALPA does not intend to present his grievance in good faith before the System Board. *See, e.g.*, *id.* ¶ 253 (Oka "inquired if his [2022] grievance would be pressed [by ALPA] to the System Board and was told it was 'unlikely.'"); *id.* ¶ 277 (Oka "has inquired several times since September 2023 if ALPA intends to press his grievance to the System Board and ALPA's responses have been replete with fallacies and misrepresentations."); *id.* ¶ 398 ("ALPA intends to not press [his] grievance to the System Board to run out the . . . two-year period during which grievances can be selected for mediation, at which point [his] grievance will simply be automatically withdrawn."). The Court therefore declines to dismiss Oka's suit for a failure to exhaust

at this juncture.

### c.     Merits

Finally, ALPA argues that Oka has failed to plausibly allege that it breached its duty of fair representation with respect to the 2022 grievance.  "A union breaches the duty of fair representation if its actions are (1) arbitrary, (2) discriminatory, or (3) made in bad faith."  *Bishop*, 900 F.3d at 397 (quoting *O'Neill*, 499 U.S. at 67).

ALPA first argues that Oka has not plausibly alleged that United has violated the collective bargaining agreement.  ALPA's arguments, however, focus on whether United violated the collective bargaining agreement with respect to its implementation of the vaccine mandate and its initial decision to place religious objectors on "personal leave" while medical objectors were placed on "medical leave."  The 2022 grievance, however, appears to have involved subsequent restrictions United enacted regarding destinations where unvaccinated pilots could or could not fly.  ALPA does not clearly explain whether and how *that* grievance lacks merit.  In fact, although Oka alleges in that grievance that United violated section 8 and section 20 of the collective bargaining agreement, ALPA's brief discusses only why United did not violate other sections of the agreement. Moreover, Oka alleges that ALPA originally filed the 2022 grievance on his behalf asserting that United *had* violated section 20 and section 8 of the collective bargaining agreement.  *See* Am. Compl., Ex. 19.  And Oka alleges that ALPA represented to the EEOC that it "intend[ed] to pursue [his] grievance through the contractual process, including presentation to the System Board."  *Id.* ¶ 255.  Oka also cites to alleged statements by an ALPA representative regarding the merit of his grievance.  *See id.* ¶ 238 (ALPA representative "told [Oka] that ALPA will help grieve the restricted

destination list" and that "if the company restricts a destination for the convenience of the company, then the company can't restrict our contractual rights. The company should have to pay for the inconvenience or accept the inconvenience, but not violate a pilot's contract."). ALPA does not explain its apparent change in position regarding the merits of Oka's grievance.

ALPA next argues that Oka has not plausibly alleged that its actions were arbitrary, discriminatory, or in bad faith. But the Court concludes that Oka has done enough, at the pleading stage, to plausibly allege that ALPA's actions were arbitrary. Although an employee does not have "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement," the Supreme Court has explained that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). "At the pleading stage, [the plaintiff] need not prove that the union acted irrationally; that said, he must include enough details about the subject-matter of the case to present a story that holds together." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 470 (7th Cir. 2020) (internal quotation marks omitted). As discussed, Oka has alleged that ALPA first supported his grievance, including by representing to the EEOC that it would press the grievance to the System Board, but then "reversed course on [that] commitment" without any legitimate justification and "continuously stalled [his] forced downgrade grievance." *Id.* ¶ 255. The Court concludes that Oka's allegations, viewed as a whole, are sufficient to plausibly allege that ALPA arbitrarily withdrew its support from his potentially meritorious grievance. The Court therefore declines to dismiss Oka's DFR claim (count 7) to the extent it is

based on the 2022 grievance.  *See Bishop*, 900 F.3d 400 ("[I]n order to succeed on their duty of fair representation claim, the plaintiffs need only prove a breach under one of the prongs of the tripartite analysis.").  ALPA may have legitimate explanations for its handling of Oka's 2022 grievance, particularly given that it appears that some portion of the grievance may have been settled.  But it is not the Court's role at this stage to choose between competing accounts of the relevant events.

### 2.  Title VII religious discrimination claim

ALPA argues that Oka has failed to state a claim against it under Title VII.  Oka brings three separate Title VII claims against ALPA, labeled "Religious Discrimination – ALPA's Disparate Treatment"; "Religious Discrimination – ALPA's Failure to Accommodate"; and "Religious Discrimination – ALPA's Retaliation."  Because the Court has already discussed the relevant legal standards for these claims, *see* Parts A.3–5, *supra*, it will not repeat that discussion here.  But a brief explanation of how Title VII applies to ALPA is necessary to resolve Oka's claims.

Title VII applies not only to employers, but also to "labor organization[s]" such as unions.  42 U.S.C. § 2000e-2(c).  Under Title VII, it is unlawful for a labor organization:

> (1) exclude or expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion . . . ;

> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's . . . religion . . . ; or

> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e-2(c). ALPA does not dispute that it qualifies as a labor organization.

The Seventh Circuit has made clear that a union is not vicariously liable for discrimination by a union member's employer. Rather, section 2000e-2(c) "concerns the union's role as the employees' agent (in bargaining and in implementing contracts)." *Maalik v. Int'l Union of Elevator Constructors Loc. 2*, 437 F.3d 650, 652 (7th Cir. 2006). "[I]f a union 'discriminates in the performance of its agency function, it violates Title VII, but not otherwise.'" *Id.* (quoting *EEOC v. Pipefitters Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003).

Turning first to Oka's intentional discrimination claim, ALPA argues that Oka has failed to plausibly allege that any of its decisions with respect to United's vaccination policy or Oka's grievances were made for the purpose of discriminating on the basis of religion. The Court agrees. For all its heft, the amended complaint simply does not tell a story that holds together regarding ALPA's alleged religious animus. Oka cites to the fact that ALPA filed a grievance on behalf of twelve unvaccinated pilots who had been terminated, but not on behalf of pilots who had been granted unreasonable religious accommodations. Certainly, selective inaction can be a form of discrimination in violation of Title VII. *See Pipefitters Ass'n Loc. Union 597*, 334 F.3d at 661 (stating that it would be "a clear violation of . . . Title VII" "[i]f a black worker asks the union to grieve a complaint, the union refuses, though if the worker were white the union would grieve his complaint"); *Green*, 740 F.3d at 1107 ("If the union would have processed [the plaintiff's] grievance or represented him [in a lawsuit] had he been white . . . then the union violated Title VII."). But nothing suggests that ALPA's decision to focus its resources on pilots who had been terminated rather than pilots who had been

26

"accommodated" (for both religious and medical reasons) was motivated by the religious nature of the pilots' objections. Nor does anything suggest that ALPA was seeking more favorable treatment for the terminated unvaccinated pilots than the terms offered to the religiously accommodated unvaccinated pilots. The fact is that, taking Oka's allegations as true, ALPA did very little to contest United's mandatory vaccination policy at all. Oka has not plausibly alleged that this inaction was discriminatorily selective. Moreover, unlike his allegations with respect to United, Oka does not clearly identify any instances in which *ALPA* singled out religiously accommodated pilots for poorer treatment than medically accommodated pilots. Indeed, it appears that much of the conduct that Oka takes issue with impacted both religious and medical objectors. *See, e.g.* Am. Compl. ¶ 244 ("[ALPA] file[d] a . . . grievance . . . on behalf of 'accommodated' pilots whose bid preferences were manipulated by the company" and subsequently "reached a [settlement] that resulted in a carve out for religiously and medically 'accommodated' pilots to be isolated from the [collective bargaining agreement] . . . ."). Finally, Oka alleges that ALPA "colluded" with United to discriminate against religiously accommodated pilots, but these allegations are too vague and conclusory to meet the plausibility standard. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[A] court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009))). The Court therefore dismisses the disparate treatment claim (count 4).

### 3.    Title VII failure to accommodate

ALPA next argues that the Court should dismiss Oka's failure-to-accommodate

claim because he "does not allege facts plausibly showing that ALPA: (1) had any ability to offer a different accommodation than United; (2) prevented United from offering his preferred accommodation (presumably allowing him to fly unvaccinated or paying him not to work); or (3) directed United to offer its unpaid leave accommodation." ALPA's Mot. to Dismiss at 13. In response, Oka does not allege that he ever sought a religious accommodation from ALPA; rather, he contends that ALPA is liable for *United*'s failure to accommodate. As the Court has previously explained, however, ALPA is not vicariously liable for United's alleged failure to accommodate. Oka's allegations are better read as arguing that ALPA discriminated against him in its *response* to United's alleged failure to accommodate. But as discussed, the Court has concluded that Oka does not plausibly allege that was the case. Although Oka argues that "ALPA selectively enforced the CBA to benefit those who sought medical exemptions from the COVID-19 vaccine mandate but to disadvantage those who sought religious accommodation," he does not explain how this is so or cite to any factual allegations supporting this assertion. Pl.'s Resp. at 17–18. Oka cites nothing in the complaint, for example, amounting to an allegation that ALPA pressed grievances on behalf of medical objectors but not religious objectors. The Court therefore concludes that Oka has not plausibly alleged that ALPA failed to accommodate his religious beliefs in violation of Title VII (count 5).

### 4. Title VII retaliation claim

Lastly, the Court agrees with ALPA that Oka has not plausibly alleged that ALPA retaliated against him in violation of Title VII. As discussed, the key question for retaliation is whether Oka has alleged that his protected activity—in this case,

requesting a religious accommodation, filing grievances regarding religious discrimination, or filing an EEOC charge—was the "but-for" cause of some adverse action taken against him by ALPA. *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 362. Oka clearly alleges that ALPA did not support his grievances. But, as this Court has recently explained, it cannot be the case that a union "retaliates" against an employee for grieving any time it simply declines to advance that employee's religion-related grievance. *See Engstrom v. Air Line Pilots Ass'n, Int'l*, No. 23 C 15792, 2024 WL 3848512, at *6 (N.D. Ill. Aug. 16, 2024) ("Just as an employer's denial of a reasonable accommodation request is not sufficient to state a claim for retaliation, neither is the union's decision not to support a member's request for reasonable accommodation."). Moreover, Oka does not plausibly allege that ALPA did not support his grievance *because* he was engaging or had engaged in protected activity. In fact, Oka's complaint suggests the opposite: that his decision to file a complaint with EEOC prompted ALPA to take action *in support of* his grievance. *See, e.g.*, Am. Compl. ¶ 243; Pl.'s Resp. to ALPA's Mot. to Dismiss at 19 (stating that ALPA did not "tak[e] the Forced Downgrade grievance until the EEOC got involved"). The Court concludes that Oka has not plausibly alleged that ALPA retaliated against him in violation of Title VII (count 6).

### Conclusion

For the reasons stated above, the Court grants United's motion to dismiss Oka's Title VII retaliation claim (count 3) but otherwise denies the motion (dkt. no. 50). The Court denies ALPA's motion to dismiss (dkt. no. 49) with respect to Oka's RLA claim (count 7) based on the union's alleged DFR breach with respect to his 2022 grievance but grants the motion with respect to the remaining DFR claims because they are time-

barred as discussed in this order.  The Court also grants ALPA's motion to dismiss the Title VII claims (counts 4, 5, and 6).  ALPA's motion to dismiss Oka's original complaint (dkt. no. 34) is terminated as moot.  The defendants are directed to answer the remaining claims by September 10, 2024.  The parties are directed to confer and attempt to agree upon a discovery and pretrial schedule and are to file a joint status report setting forth a proposed schedule by August 29, 2024.  The case is set for a telephonic status hearing on September 5, 2024 at 9:15 a.m., using call-in number 650-479-3207, access code 980-394-33.

Date:  August 20, 2024

_____
MATTHEW F. KENNELLY
United States District Judge