**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JOSEPH JOHN OKA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-CV-15793 |
| | ) | |
| v. | ) | Honorable Matthew F. Kennelly |
| | ) | |
| UNITED AIRLINES, INC. & | ) | |
| AIR LINE PILOTS ASSOCIATION, | ) | |
| INTERNATIONAL | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT AIR LINE PILOTS ASSOCIATION, INTERNATIONAL'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION,
 INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*

December 6, 2024

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES.................................................................................... iii

GLOSSARY OF DEFINED TERMS ..................................................................... vi

ALLEGED FACTS ................................................................................................1

    A.    The Parties, the UPA, and LOA 21-02 .....................................................1

    B.    United's Vaccine Mandate and Plaintiff's Accommodation and Return...................................................................................................2

    C.    Status Quo Grievances Concerning the Vaccine Mandate ......................3

PROCEDURAL HISTORY ...................................................................................3

ARGUMENT .........................................................................................................4

I.    The Court Should Dismiss Oka's DFR Claims.............................................4

    A.    The Previously Dismissed DFR Claims Do Not State a Plausible Claim....................................................................................................4

        1.    Judicial Review of Union Actions Under the DFR Is Highly Deferential..................................................................................4

        2.    The Six-Month Limitations Period Bars the Previously Dismissed DFR Claims........................................................5

    B.    The Court Lacks Jurisdiction Over Oka's Downgrade Grievance Claim....................................................................................................5

        1.    The Downgrade Grievance Claim Is Not Ripe. ..........................5

        2.    Oka Lacks Standing for His Downgrade Grievance Claim Against ALPA. ....................................................................9

III.    Oka Does Not Plausibly Allege that ALPA Violated Title VII. .........................10

    A.    Oka's Title VII Claim Based on LOA 21-02 Is Untimely and Meritless.................................................................................................10

    B.    The SAC Fails to Plausibly Allege Religious Discrimination by ALPA. ...................................................................................................10

1.    The SAC's Claims of Differing Benefits to Medically and
      Religiously Accommodated Pilots Do Not Plausibly Show
      Discrimination by ALPA..............................................................................11

2.    The SAC Does Not Plausibly Allege Discrimination Based
      on ALPA's Pursuit of Grievances on Behalf of Terminated
      Unvaccinated Pilots. ...................................................................................12

3.    The Alleged Statements by ALPA Representatives and Staff
      Do Not Plausibly Show that ALPA Acted Discriminatorily. ....................12

4.    The Alleged Statements by Todd Insler Do Not Plausibly
      Show Discriminatory Action by ALPA.......................................................14

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ...............................................................5

*Alexander v. Gardner-Denver*, 415 U.S. 36 (1974).........................................................13

*ALPA v. O'Neill*, 499 U.S. 65 (1991) ...........................................................................4, 5

*ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973) ...........................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................4

*Bell v. Pappas*, 2024 WL 1702691 (N.D. Ill.)..................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).............................................................4

*BLE v. Louisville & Nashville R.R.*, 373 U.S. 33 (1963) ..................................................6

*Brooks v. ALPA*, 630 F. Supp. 2d 52 (D.D.C. 2009).........................................................6

*Bldg. Materials & Constr. Teamsters Loc. No. 216 v. Granite Rock Co.*,
    851 F.2d 1190 (9th Cir. 1998) ...................................................................................7

*Butt v. Bd. of Trustees of E. Ill. Univ.*, 83 F. Supp. 2d 962 (C.D. Ill. 1999) ..................14

*Cunningham v. United Air Lines, Inc.*, 2014 WL 441610 (N.D. Ill.), *aff'd*,
    769 F.3d 539 (7th Cir. 2014) ....................................................................................8

*Dennis v. St. Mary Med. Ctr., Inc.*, 2021 WL 5304003 (N.D. Ind.) ...............................10

*Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565 (7th Cir. 1989)....................................7

*Dozier v. TWA, Inc.*, 760 F.2d 849 (7th Cir. 1985)...........................................................6

*FDA v. Alliance for Hippocratic Med.*, 144 S. Ct. 1540 (2024) ......................................9

*Flury v. Marriott International Inc.*, 2020 WL 2467271 (D. Ariz.)...................................6

*Freeman v. Loc. Union No. 135*, 746 F.2d 1316 (7th Cir. 1984) .................................6, 13

*French v. Idaho State AFL-CIO*, 164 F. Supp. 3d 1205 (D. Idaho 2016) ......................12

*George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH*,
    55 F.3d 1206 (6th Cir. 1995)......................................................................................7

*Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819 (N.D. Ill. 2021) ............................10

*Johnson v. ILA, Loc. 815 AFL-CIO*, 520 F. App'x 452 (7th Cir. 2013) ..........................................11

*Jennings v. Auto Meter Products., Inc.*, 495 F.3d 466 (7th Cir. 2007) ...................................7

*Kindred v. Memphis Light Gas & Water, Inc.*, 2023 WL 3158951 (6th Cir.) ................................10

*Kwasnik v. Nat'l R.R. Pass. Corp.*, 1997 WL 109977 ......................................7

*Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990) ......................................7

*Lugo v. IBEW Loc. # 134*, 175 F. Supp. 3d 1026 (N.D. Ill. 2016) .................................11

*Maalik v. Int'l Union of Elevator Constructors Loc. 2*, 437 F.3d 650 (7th Cir. 2006) ......................................................................................10, 13

*Manzardo v. Pullman Co.*, 1972 WL 12102 (N.D. Ill.) ......................................12

*Muday v. Cleaver*, 590 F. Supp. 1209 (W.D. Mich. 1984) ......................................7

*Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695 (N.D. Ill. 2020) ..................................9

*Olsen v. UPS*, 892 F.2d 1290 (7th Cir. 1990) ......................................8

*Perry v. Midstates Indep. Union*, 20 F. App'x 527 (7th Cir. 2001) ......................................7

*Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561 (N.D. Ill.) ..................................2

*Rios-O'Donnell v. American Airlines, Inc.*, 837 F. Supp. 2d 868 (N.D. Ill. 2011) ......................6

*Stumo v. United*, 382 F.2d 780 (7th Cir. 1967) ......................................7

*Tate v. Nat'l Postal Mail Handlers Union Local 305*, 2018 WL 2538445 (D.D.C.) ......................9

*Transunion LLC v. Ramirez*, 594 U.S. 413 (2021) ......................................9

*United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990) ......................................4

*Vance v. Lobdell-Emergy Mfg. Co.*, 932 F. Supp. 1130 (S.D. Ind. 1996) ......................................6

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429 (7th Cir. 1993) ......................2

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................6

*Wickstrom v. ALPA*, 2023 WL 5720989 (N.D. Ill.) ......................................8, 15

*Wis. Right to Life State Pol. Action Comm v. Barland*, 664 F.3d 139 (7th Cir. 2011) ......................................5, 6

**Statutes, Rules, and Regulations:**

29 U.S.C. § 2000e-5(e)(1).................................................................................................10

42 U.S.C. § 2000e-5(b)...................................................................................................10

45 U.S.C. § 153, First (q)..................................................................................................6

45 U.S.C. § 184.................................................................................................................6

Fed. R. Civ. P. 8(a)(2) ......................................................................................................4

Fed. R. Civ. P. 12(b)(1) .....................................................................................................1

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

## GLOSSARY OF DEFINED TERMS

| | |
|---|---|
| ALPA | Defendant Air Line Pilots Association, International and, collectively, ALPA and the United Airlines Master Executive Council of ALPA |
| CBA | Collective Bargaining Agreement |
| DFR | Duty of Fair Representation |
| Downgrade Grievance | Grievance (ALPA Case No. 2022-U-12-028R) filed by ALPA on Plaintiff's behalf on July 14, 2022, attached to SAC as Exhibit 19 |
| FAC | First Amended Complaint, Dkt. No. 44 (filed Jan. 30, 2024) |
| GRP | United Pilots' Grievance Review Panel |
| LOA 21-02 | Letter of Agreement between ALPA and United ("COVID Vaccinations"), dated May 25, 2021 |
| RLA | Railway Labor Act, 45 U.S.C. §§ 151-188 |
| SAC | Plaintiff's Second Amended Complaint, Dkt. No. 73 (filed October 30, 2024) |
| Status Quo Grievances | Grievances filed by groups of individual pilots alleging that United's vaccine mandate violated UPA, LOA 21-02, and/or RLA |
| United | United Airlines, Inc. |
| United MEC | United pilots' Master Executive Council, ALPA's highest local coordinating body for the United pilots |
| UPA | United Pilots Agreement, the collective bargaining agreement between United and ALPA |

Plaintiff Joseph Oka's Second Amended Complaint rehashes the same previously dismissed claims against Defendant ALPA over its response to Defendant United's COVID vaccine mandate. ECF No. 59. It adds a few new factual allegations but still fails to state a plausible claim that ALPA violated Title VII or its duty of fair representation. The Court therefore should dismiss the SAC on the same grounds as the First Amended Complaint – untimeliness of the DFR claims and failure to state a plausible Title VII claim. Further, the claim that survived ALPA's earlier motion to dismiss – concerning ALPA's alleged delay in arbitrating Oka's 2022 "Downgrade Grievance" – fails: (1) the claim is not ripe because of the upcoming arbitration of the Grievance; and (2) Oka lacks standing, and does not state a plausible claim, because ALPA neither injured him nor is legally liable to redress his claim. The Court therefore should dismiss the entire SAC as against ALPA under Rules 12(b)(1, 6).

## ALLEGED FACTS

### A.     The Parties, the UPA, and LOA 21-02

United is an airline; Oka is a United pilot; ALPA is his union. SAC ¶¶ 9-10, 13-15. The UPA sets the terms and conditions of United pilots' employment and allows: (1) United to alter some personnel policies; and (2) personal and medical leaves of absence, with greater benefits for medical leaves. *Id.* ¶ 16 & Ex. 2 at 168, 174-76, 277 (§§ 12-A-1, 12-B-1, 12-J, 21-K)).

The UPA permits pilots to file non-disciplinary grievances and internally appeal United's decisions. *Id.* at 186-87 (§ 17-A-(1-4, 7)). Further appeal is to the arbitral System Board. *Id.* at 186 (§ 17-A-5). The five-member Board consists of a neutral and two members each appointed by United and ALPA and hears "any dispute properly submitted to it by" ALPA. *Id.* at 194-95 (§§ 18-B-1, 18-C). If pilots dispute ALPA's refusal to arbitrate a non-disciplinary grievance, the GRP may reverse ALPA's decision. *Id.* 186-87 (§ 17-A-6). Pilots may choose ALPA, private counsel, or another representative to present a grievance to the Board. *Id.* at 196 (§ 18-D-3).

In May 2021, ALPA and United signed LOA 21-02. SAC ¶ 31. The LOA barred United from requiring COVID vaccination, provided financial incentives for it, and allowed United to designate airports as vaccine destinations if those places limited access by unvaccinated pilots. *Id.* Ex. 3. United could terminate the LOA on notice. *Id.* at 7 (¶ 12.C).

### B. United's Vaccine Mandate and Plaintiff's Accommodation and Return

In January 2021, ALPA advised pilots that the "UPA does not prohibit mandatory vaccinations." SAC ¶ 79 n.4; App. 10.[1] In August 2021, United announced its termination of LOA 21-02 and required pilots to be vaccinated by September 27, 2021, or be discharged. SAC ¶¶ 48-49. ALPA notified pilots of United's Reasonable Accommodation Process ("RAP") for religious and medical objectors and that objections "are not governed by the UPA." *Id.* ¶ 79 n.4; App. 23. Oka sought and United granted a religious accommodation, and United placed him on unpaid leave in November. SAC ¶¶ 51, 58-66. He returned to work five months later. *Id.* ¶ 150.

Upon his return, United limited Oka's flight destinations, prompting his downgrade to 787 first officer. *Id.* ¶¶ 151-59. On July 14, 2022, ALPA filed a Downgrade Grievance on his behalf, alleging that United improperly restricted unvaccinated pilots from bidding or trading to 32 restricted destinations, which caused his hardship downgrade. *Id.* ¶ 173 & Ex. 19. The Grievance sought Oka's reinstatement to his 787 captain award and 787 captain pay for flying since his downgrade. *Id.* Ex. 19 at 2. ALPA represented Oka in the grievance process; United denied the Grievance; and ALPA appealed to the Board in January 2023. SAC Ex. 20 at 1; App. 32-44. During the grievance process, United offered to allow Oka to make his hardship transfer temporary, and Oka upgraded to captain in 2023. SAC ¶¶ 9, 180-81, 184, 196 & Exs. 20 at 1, 21.

---

[1] The Court may consider the documents in the attached Appendix because they are referred to in the SAC and "central to" it. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561, *3 (N.D. Ill.).

Since September 2023, Oka has asked ALPA to have the Board hear his Grievance. SAC ¶ 198. On and after August 23, 2024, ALPA offered Board dates in October 2024, but Oka refused, stating he "believe[d] that the appropriate path is to defer the arbitration until the resolution of this litigation." App. 52. Oka then accepted but later cancelled Board dates in December 2024, so arbitration is now scheduled for February 2025. App. 5 (¶ 3), 70, 82-84, 86. Oka rejected ALPA's offer to provide counsel for the hearing and elected to use private counsel. App. 45, 63, 67.

### C. Status Quo Grievances Concerning the Vaccine Mandate

In August 2021, Oka and others filed Status Quo Grievances asserting that United's mandate violated the RLA and UPA Section 1(a) (which recognizes ALPA as pilots' collective bargaining representative), apparently claiming that Section 1(a) required negotiations before United could mandate vaccination. SAC ¶¶ 126, 128, 130. Oka's grievance also alleged that United discriminated against medical and religious vaccine objectors but did not claim that the treatment of medical objectors discriminated against religious objectors. *Id.* Ex. 10 at 3 (¶ 9).

ALPA did not support the grievances. United denied them; ALPA declined to submit them to the Board; and, in March 2022, the GRP issued a written denial of Oka's request to require ALPA to do so. SAC ¶¶ 126, 128-30, 133-140, 146-47 & Exs. 10, 12-14; App. 25-31.

### PROCEDURAL HISTORY

Oka filed his Complaint and the FAC on October 3, 2023, and January 30, 2024, respectively. On August 20, 2024, the Court dismissed: (1) all his Title VII claims against ALPA; and (2) his DFR claims as outside the six-month limitations period (the "Previously Dismissed DFR Claims"), except his claim of ALPA's alleged arbitrary delay in arbitrating his Downgrade

Grievance. ECF No. 59 at 17-30.[2] The SAC repeats the FAC's: (1) Title VII claims against ALPA; and (2) DFR claims but alleges no new facts concerning their timeliness. SAC ¶¶ 185 & n.7, 289-311. It also adds a few new alleged remarks by non-decisionmakers and MEC Chair Captain Todd Insler but fails to plausibly show religious discrimination by ALPA.

## ARGUMENT

I.    **The Court Should Dismiss Oka's DFR Claims.**

A.    **The Previously Dismissed DFR Claims Do Not State a Plausible Claim.**

Rule 12(b)(6) requires the Court to view the SAC in the light most favorable to Oka and assume specific factual allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But allegations that are "no more than conclusions [] are not entitled to the assumption of truth," and factual allegations must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009). A "plausible" claim requires more than the "sheer possibility" or "conceiv[ability]" of unlawful conduct and must "show" entitlement to relief. *Id.* at 678, 680 (citing Fed. R. Civ. P. 8(a)(2)); *Twombly*, 550 U.S. at 570.

1.    **Judicial Review of Union Actions Under the DFR Is Highly Deferential.**

The DFR is "a purposefully limited check" on the "wide range of reasonableness [that] must be allowed a statutory bargaining representative in serving the unit it represents." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990) (quotations omitted)). Judicial review of union actions under the DFR "must be highly deferential, recognizing the wide latitude" that unions need to perform their collective bargaining functions effectively. *ALPA v. O'Neill*, 499

---

[2] The dismissed claims rested on: (1) LOA 21-02; (2) ALPA not challenging United's vaccine mandate; (3) Oka's unpaid leave; (4) ALPA not supporting his 2021 Status Quo Grievance and the GRP's March 2022 refusal to advance that Grievance to the System Board; (5) ALPA not supporting his fall 2021 complaints about the RAP; and (6) the March 2023 "Carveout Settlement." ECF No. 59 at 17-21 & n.2.

U.S. 65, 78 (1991). A union breaches its DFR only if its actions are: "[(1)] arbitrary, [(2)] discriminatory, or [(3) made in] bad faith." *Id.* at 67 (quotations omitted).

### 2. The Six-Month Limitations Period Bars the Previously Dismissed DFR Claims.

The SAC makes no new allegations showing that the Previously Dismissed DFR Claims are timely. Oka could have sued within six months of the pertinent events. As the Court earlier held, the governing six-month limitations period bars those Claims. ECF No. 59 at 17-21.[3]

### B. The Court Lacks Jurisdiction Over Oka's Downgrade Grievance Claim.

Despite his respective rejection and cancellation of October and December 2024 arbitration dates for his Downgrade Grievance, Oka claims that ALPA "equivocates on pressing [that] grievance to the System Board" and "intends to not press [that] grievance to the System Board to run out the UPA Section 17-D-1 two-year period[.]" SAC ¶¶ 312, 316. The Court lacks jurisdiction over this claim because it is not ripe. Further, as a factual matter (due to Oka's false claim that ALPA continues to delay the Board hearing), Oka lacks standing to raise it due to lack of both ALPA-caused injury and redressability. *Bell v. Pappas*, 2024 WL 1702691, *6 (N.D. Ill.).

### 1. The Downgrade Grievance Claim Is Not Ripe.

Oka's Downgrade Grievance claim is not ripe and should be dismissed. Ripeness rests "on the Constitution's case-or-controversy requirements" and prudential concerns. *Wis. Right to Life State Pol. Action Comm v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). It prevents "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Ripeness "for adjudication depends on the fitness of the issues for judicial decision and the hardship to the parties of

---

[3] To the extent necessary, ALPA respectfully incorporates its motion to dismiss the FAC and supporting reply memorandum further explaining the untimeliness of those claims and their lack of merit. ECF Nos. 49 (at 5-11), 57 (at 3-6, 8-11).

withholding court consideration." *Barland*, 664 F.3d at 148 (quotations omitted).

Oka's DFR claim is not ripe. He has upgraded to captain, and the upcoming Board hearing will both resolve the remainder of his Downgrade Grievance and, if successful, provide full relief, which makes judicial involvement unnecessary. He is suffering no hardship because the Grievance will be heard promptly in its designated forum. 45 U.S.C. § 184; *BLE v. Louisville & Nashville R.R.*, 373 U.S. 33, 36-38 (1963). He may challenge ALPA's Grievance-related conduct (and United's UPA breach) *after* the Board's award. *See* 45 U.S.C. §§ 153 First (q), 184.

Case law confirms this analysis. Hybrid claims against employers (for breaching a CBA) and unions (for a related DFR breach) accrue when the grievance process ends. *Freeman v. Local Union No. 135, IBT*, 746 F.2d 1316, 1320 (7th Cir. 1984); *Dozier v. TWA, Inc.*, 760 F.2d 849, 851-52 (7th Cir. 1985). Thus, *Rios-O'Donnell v. American Airlines, Inc.*, 837 F. Supp. 2d 868, 875 (N.D. Ill. 2011), held that plaintiff's DFR claim "did not accrue until the System Board reached its decision" because "an arbitration decision in [her] favor would have resulted in the relief she seeks since she would have kept her job and suffered no injury" due to the union's DFR breach. *See also id.* (tolling DFR limitations period during grievance process); *Vance v. Lobdell-Emery Mfg. Co.*, 932 F. Supp. 1130, 1135 (S.D. Ind. 1996) (DFR claim accrued at time of arbitration award and not when union earlier omitted certain allegations from grievance).

Claims awaiting arbitration, like Oka's, are not ripe for DFR suits. Plaintiffs in *Brooks v. ALPA*, 630 F. Supp. 2d 52 (D.D.C. 2009), sued to force ALPA to withdraw a grievance, but the court found the suit unripe because the system board had not yet ruled and therefore they had not suffered "'harm that has matured sufficiently to warrant judicial intervention.'" *Id.* at 56 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)). Likewise, *Flury v. Marriott International Inc.*, 2020 WL 2467271, *3 (D. Ariz.), found unripe a DFR suit over a union's grievance

6

representation because the arbitration had not yet occurred. *See also Muday v. Cleaver*, 590 F. Supp. 1209, 1210 (W.D. Mich. 1984) (claim for CBA breach not ripe while grievance appeal was pending).

Outside the DFR context, courts similarly have held that the pendency of arbitrations or separate administrative proceedings makes a plaintiff's suit unripe. *Jennings v. Auto Meter Products., Inc.*, 495 F.3d 466, 477 (7th Cir. 2007), found a claim unripe because the patent office appeal board had not yet ruled, and that ruling would "shed meaningful light on the nature and degree of harm" suffered by plaintiff. *See also George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) (licensee's antitrust suit not ripe while foreign arbitration of same claim was pending); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (claim unripe that depended on result of pending, separate suit); *Bldg. Materials & Constr. Teamsters Loc. No. 216 v. Granite Rock Co.*, 851 F.2d 1190, 1197 (9th Cir. 1998) (suit over legality of arbitrator's ruling not ripe before arbitrator's decision).

Oka responds that "he will not be given fair representation because of ALPA hostility toward him." SAC ¶ 314. This claim of futility fails. "[S]peculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust." *Perry v. Midstates Indep. Union*, 20 F. App'x 527, 531 (7th Cir. 2001). Rather, "the employee must put the grievance procedure to the test[.]" *Id.* (no futility despite union animus towards those, like plaintiff, who associated with rival unions). Thus, *Stumo v. United Airlines, Inc.*, 382 F.2d 780, 787 (7th Cir. 1967), held that a plaintiff could not abandon the system board process she (like Oka) invoked despite her claim of ALPA hostility to her as a non-member. *Accord Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 574 (7th Cir. 1989) (employees must pursue higher levels of grievance process despite bias in lower levels); *Kwasnik v. Nat'l R.R. Pass. Corp.*, 1997 WL 109977, *4 n.4

(N.D. Ill.) ("futility exception applies only where a decision has already been made as to the underlying contractual dispute or where arbitral resolution of the dispute is not possible").

No alleged facts show futility. ALPA filed and argued for the Downgrade Grievance with United, submitted it to the Board for resolution, and scheduled it for hearing. ALPA offered to Oka: (1) a choice of arbitrators, dates, and eight ALPA-appointed Board members, including two not involved with his prior or current grievances; (2) ALPA counsel to present the Grievance; and (3) help preparing the case. App. 45, 64, 65, 69-72, 75; *supra* at 3. That Oka is unhappy with ALPA's separate response to United's 2021 vaccine mandate and ALPA's advice concerning settlement does not show futility. SAC ¶¶ 181-96; *see Olsen v. UPS*, 892 F.2d 1290, 1295 (7th Cir. 1990) ("union functions as both advocate and counselor" in grievance process). Indeed, this case is even easier than *Cunningham v. United Air Lines, Inc.*, 2014 WL 441610 (N.D. Ill.), *aff'd*, 769 F.3d 539 (7th Cir. 2014), which rejected a futility claim where United and ALPA both disagreed with the merits of plaintiffs' grievance.

*Wickstrom v. ALPA*, 2023 WL 5720989 (N.D. Ill.), is not to the contrary. That case found: (1) futility for non-grievants to grieve due to the GRP's decision not to arbitrate the Status Quo Grievances; and (2) plaintiffs' pending grievances over their discharges due to United's vaccine mandate did not render unripe their separate DFR claim concerning ALPA's response to that mandate. In contrast, ALPA has supported the Downgrade Grievance; Oka's DFR claim concerns the same UPA provisions as that Grievance; and the Board will hear that Grievance shortly, potentially offering full relief and making judicial intervention premature.[4]

---

[4] ALPA's alleged delay in arbitrating the Grievance does not make the claim ripe. Oka refused an October 2024 Board hearing and then cancelled the December hearing. *Cf. Mechmet v. Four Seasons Hotels Ltd.*, 825 F.2d 1173, 1179 (7th Cir. 1987) ("Having prevented [the union] from filing a grievance, [plaintiffs] will not be heard to accuse the union of having breached its [DFR[ by failing to grieve [their] complaint."). Further, courts accept some delay, and do not allow suits to go forward, when a union's internal processes can cure the alleged DFR breach. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 807

### 2. Oka Lacks Standing for His Downgrade Grievance Claim Against ALPA.

To meet his burden to show standing for his Downgrade Grievance claim, Oka must prove: (i) he "suffered or likely will suffer an injury in fact, (ii) the injury likely was caused or will be caused by [ALPA], and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024); *Transunion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). The causation requirement bars plaintiffs "not injured by the defendant's action." *Alliance*, 602 U.S. at 383. The "injury in fact" must be "real and not abstract" and "must have already occurred or be likely to occur soon." *Id.* at 381.

Oka's Downgrade Grievance claim against ALPA fails the causation and redressability tests. The Grievance alleges that *United*, not ALPA, breached the UPA and caused financial loss by forcing his downgrade to first officer. Oka complains that ALPA delayed the Board hearing and gave bad advice about settlement, but he does not allege any loss caused by ALPA or that the Board cannot order full relief. He thus lacks standing. *See Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 704-05 (N.D. Ill. 2020) (no standing when defendant's failure to provide copy of contract did not harm plaintiff), *aff'd*, 37 F.4th 1326 (7th Cir. 2022); *Tate v. Nat'l Postal Mail Handlers Union Local 305*, 2018 WL 2538445, *3 (D.D.C.) (no standing where union steward's witness statement caused no harm).

As for redressability, there is no joint and several liability in hybrid DFR cases. United, not ALPA, must compensate Oka for his loss due to United's alleged UPA breach, and ALPA's liability is limited to "increases if any [to] those damages caused by" its conduct. *Vaca v. Sipes*, 386 U.S. 171, 197-98 (1967) (vacating jury award of damages against union since "all or almost

---

(7th Cir. 2008) ("So long as intra-union appeals can result in the reinstatement of a grievance, such that a plaintiff can obtain whatever remedies are available within the negotiated process for resolving disputes, a union member retains the duty to exhaust such appeals before bringing suit.").

all" damages were attributable to employer's wrongful discharge). *Accord IBEW v. Foust*, 442 U.S. 42, 49 (1979) (union "cannot be held liable for damages attributable to the employer's conduct"); *Bowen v. USPS*, 459 U.S. 212, 224 (1983); *de Arroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281, 289-90 (1st Cir. 1970). United forced Oka's downgrade. He alleges no losses caused by ALPA, no redress lies against it, and he therefore lacks standing to sue.

## III.    Oka Does Not Plausibly Allege that ALPA Violated Title VII.

The Court dismissed the FAC's Title VII claims against ALPA on the merits. The SAC adds nothing to change the Court's analysis, and those claims again should be dismissed.

### A.    Oka's Title VII Claim Based on LOA 21-02 Is Untimely and Meritless.

Oka's claim that the May 2021 LOA 21-02 discriminated due to religion is untimely and meritless. SAC ¶¶ 31, 246. He filed his EEOC Charge in May 2022, after the 300-day limitation period. *Id.* ¶ 211; 29 U.S.C. § 2000e-5(e)(1). His January 2022 EEOC "inquiry" is not an EEOC Charge. SAC ¶ 211; 42 U.S.C. § 2000e-5(b); *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 828 (N.D. Ill. 2021); *Kindred v. Memphis Light, Gas & Water, Inc.*, 2023 WL 3158951, *5 (6th Cir.), *cert. denied*, 144 S. Ct. 2637 (2024); *Dennis v. St. Mary Med. Ctr., Inc.*, 2021 WL 5304003, *2 (N.D. Ind.). Oka also does not claim that the LOA treated unvaccinated religious and non-religious objectors differently or that any pilot (religious or not) could vote on it and thus does not plausibly plead discrimination.

### B.    The SAC Fails to Plausibly Allege Religious Discrimination by ALPA.

"[A] union is not vicariously liable for discrimination by a union member's employer" under Title VII but instead violates Title VII only if it "'discriminates in the performance of its agency function' … 'in bargaining and in implementing contracts[.]'" ECF No. 59 at 26 (quoting *Maalik v. Int'l Union of Elevator Constructors Loc. 2*, 437 F.3d 650, 652 (7th Cir. 2006)). The Court accordingly dismissed the FAC's Title VII claims against ALPA because while ALPA

allegedly "did very little to contest United's mandatory vaccination policy at all," the FAC did not "plausibly allege[] that this inaction was discriminatorily selective[.]" *Id.* at 26-27. The SAC's few new allegations do not fix this fundamental flaw.

> **1. The SAC's Claims of Differing Benefits to Medically and Religiously Accommodated Pilots Do Not Plausibly Show Discrimination by ALPA.**

Oka asserts that ALPA discriminatorily favored medical over religious objectors by: (1) not challenging benefits that United provided to medical objectors; and (2) cooperating with United on those benefits. Neither states a plausible claim.

Oka again charges ALPA with "purposeful inaction" and discrimination by not challenging benefits that United gave medically accommodated pilots. SAC ¶¶ 97, 249; FAC ¶ 338. Oka made no such claim of discrimination in his 2021 Status Quo Grievance. SAC Ex. 10.

The Court should again reject this claim. No authority supports Oka's theory that ALPA had to grieve to force United to eliminate a benefit it granted to medical RAP pilots and harming them would not have benefitted him. Further, as in the FAC, nothing in the SAC "clearly identif[ies] any instances in which *ALPA* singled out religiously accommodated pilots for poorer treatment than medically accommodated pilots[.]" ECF 59 at 27; *Johnson v. ILA, Loc. 815 AFL-CIO*, 520 F. App'x 452, 453-54 (7th Cir. 2013).

Oka's bald allegation that ALPA and United "worked together on vaccine policies that would benefit medical objectors, but not religious objectors" does not fix this claim. SAC ¶ 30; *accord id.* ¶¶ 89-91, 93-97, 99. He offers no supporting facts, even admitting that United "unilaterally designated" and "bestowed" the religious accommodation. *Id.* ¶ 76. The Court rejected the FAC's similar conclusory claims and should do so again. *See* ECF No. 59 at 27; FAC ¶¶ 122, 127, 338-39. *See also Lugo v. IBEW Loc. # 134*, 175 F. Supp. 3d 1026, 1038 (N.D. Ill. 2016) (allegations "of collusion without any supporting factual basis, [are] merely a legal

conclusion that do[] not receive the presumption of truth on a motion to dismiss"); *French v. Idaho State AFL-CIO,* 164 F. Supp. 3d 1205, 1217 (D. Idaho 2016) (conclusory allegations of union-employer conspiracy to discriminate failed to state claim); *cf. Manzardo v. Pullman Co.*, 1972 WL 12102, at *7 (N.D. Ill.) (similar re DFR claim), *aff'd*, 489 F.2d 757 (7th Cir. 1973).[5]

### 2. The SAC Does Not Plausibly Allege Discrimination Based on ALPA's Pursuit of Grievances on Behalf of Terminated Unvaccinated Pilots.

Oka repeats the FAC's claim that ALPA discriminated against him in its unsuccessful grievance on behalf of pilots discharged for violating United's vaccine mandate because, if successful, the discharged pilots would have received benefits available to non-qualified pilots. SAC ¶¶ 98, 248-249; FAC ¶¶ 338. *But see* SAC ¶ 289 (alleging that ALPA refused to represent terminated pilots). That grievance relied on United's prior treatment of pilots not vaccinated for Yellow Fever. App. 96-99, 106-08. The Court earlier found that Oka's allegations failed to state a claim because "nothing suggests that ALPA's decision to focus its resources on pilots who had been terminated rather than pilots who had been 'accommodated' (for both religious and medical reasons) was motivated by the religious nature of the pilots' objections." ECF 59 at 26-27. Indeed, Oka made no such claim for "non-qualified pilot" benefits in his Status Quo Grievance, and he does not allege that he asked ALPA to try to obtain such benefits for him or other objectors. SAC Ex. 10. Rather, Oka fared *better* than discharged pilots because he was able to return to active employment with full seniority in March 2022.

### 3. The Alleged Statements by ALPA Representatives and Staff Do Not Plausibly Show that ALPA Acted Discriminatorily.

---

[5] United's payment of sick leave to medically accommodated pilots also was logical because they could not satisfy United's medical standards. Oka does not explain how his religious objection was a medical instead of a personal claim. Instead, he cites a 2020 MEC grievance stating "the company's long-standing policy that a pilot may only use sick time when actually sick" (SAC ¶ 97; App. 13-15), but that grievance tried to help pilots being charged sick leave, not hurt them as Oka suggests ALPA should have done here.

Oka claims that a few alleged statements of opinion by individuals not involved in the relevant decisions show religious discrimination. *See* SAC ¶¶ 111, 113-17, 119-20.

These efforts fail. First, no remark concerns Oka's Downgrade Grievance claim. Second, no remark supports his primary claim that ALPA neither opposed United's vaccine mandate nor supported his Status Quo Grievance due to religious animus. Regardless of religion or medical condition, United required vaccination of all its pilots, and ALPA reacted the same way for all of them. In January 2021 – months before the mandate – ALPA told pilots that the UPA allowed it, the GRP agreed in March 2022, and ALPA did not support any objectors' grievances.

Third, no remark supports Oka's claim that ALPA discriminated based on religion by staying out of the Title VII accommodation process. ALPA did so for everyone, treating all RAP pilots the same regardless of why they objected. *Accord* SAC ¶ 111 (Cramer's alleged remarks).[6]

Finally, as shown below, the remarks do not plausibly show ALPA acted discriminatorily.

**Alleged Morse, Worster, and Cochran Remarks**. Oka claims that former MEC Chair and current ALPA First Vice-President Wendy Morse stated that "animus existed toward the religious accommodated pilots" and told "medically exempted pilots that they would have likely returned to work sooner had it not been for the pilots seeking religious accommodation." SAC ¶ 119. He further alleges that current MEC Chair Worster stated that the "religious pilots really got screwed by Todd Insler" and that ALPA attorneys "helped United engage in discrimination[.]" *Id.*

---

[6] ALPA had no duty in the RAP because Title VII prohibits discrimination in a union's "performance of its agency function … but not otherwise." *Maalik*, 437 F.3d at 652. ALPA was not pilots' agent under Title VII, and lacked a DFR to them, because they could bring their own Title VII claims and settle or litigate them without ALPA's consent. *Freeman*, 746 F.2d at 1321; *see also Alexander v. Gardner-Denver*, 415 U.S. 36, 49-52 (1974) (distinguishing between collectively bargained and individual statutory rights and holding that grievance arbitration decisions are not *res judicata* on statutory claims); *ALSSA, Loc. 550 v. Am. Airlines, Inc.*, 490 F.2d 636, 640-62 (7th Cir. 1973) (union's conflicting interests barred its service as class representative for Title VII claims seeking reinstatement with seniority).

¶¶ 116-17. Oka finally alleges that, in January 2024, ALPA attorney Tom Cochran stated that the "reason ALPA did not help the religiously accommodated pilots was purely political." *Id.* ¶ 115.

These alleged remarks do not plausibly show that ALPA's actions discriminated based on religion but are merely opinions aligning with Oka's views. They allege no supporting facts (like a decisionmaker stating that ALPA did not oppose the vaccine mandate because it did not want to help religious pilots) and thus support no improper motive by ALPA. *See Butt v. Bd. of Trustees of E. Ill. Univ.,* 83 F. Supp. 2d 962, 974 (C.D. Ill. 1999) ("Without more … opinions regarding others' motivations do not provide evidence of intentional discrimination."); *accord* SAC ¶ 120 (bald claim of pilot Strang). Further, Oka does not allege that these individuals participated in the relevant decisions. *Accord* SAC ¶ 111 (alleged remarks of Local Council Chair Cramer).

**Alleged Remarks of Rathman and Freeman.** Oka alleges that: (1) in November 2021, current representative and former candidate for MEC Chair Marc Rathman mocked a fundraiser for religious objectors, SAC ¶ 113; and (2) in January 2022, Oka wrote a local council resolution calling for active pilots to fund assistance for religiously accommodated pilots and that a current committee chair, Margie Freeman, responded that religious objectors were "liars and frauds" and were not taking the vaccine for political reasons, *id.* ¶ 114. The alleged remarks show nothing because Oka does not assert that Rathman or Freeman had any ALPA position when they spoke or that they had any role in ALPA's decisions regarding the vaccine mandate.

### 4. The Alleged Statements by Todd Insler Do Not Plausibly Show Discriminatory Action by ALPA.

Oka cites alleged remarks by MEC Chair Insler, but none plausibly show religious discrimination. Oka repeats an earlier claim that, in May 2021, Insler strongly disputed a claim that a vaccine mandate would violate the post-Holocaust Nuremberg Code. SAC ¶ 45; FAC ¶ 56.

14

Made months before United's vaccine mandate, the comment neither references religion nor shows that ALPA acted due to anti-religious animus. *See Wickstrom*, 2023 WL 5720989, *6.

Oka next claims that Insler "communicated daily" with United CEO Scott Kirby. SAC ¶ 116. However, frequent communications between union and corporate leaders are not unusual. In that regard, Oka's "information and belief" that Insler was motivated by a "desire to gain favor with Kirby" and discriminate against religious pilots is sheer conclusory conjecture. *Id.*

Oka asserts that, in October 2021, Insler suggested that some religious objectors were insincere because they chose vaccination over United's accommodation. SAC ¶¶ 109-10. However, Oka admits that ALPA was uninvolved in the RAP for any vaccine objectors, be they religious or medical. Insler's hands-off approach for all pilots in the RAP regardless of the basis for their objections thus was not "discriminatorily selective." ECF No. 59 at 26-27.

Finally, Oka alleges that a protest by religious pilots at an ALPA meeting in October 2022 and Insler's subsequent failure to be elected ALPA national president was a source of animus for Insler and "ALPA attorneys." SAC ¶ 118. Those events occurred months after Insler left office and the end of the mandate. *Id.* ¶¶ 149-50, 160. Events in October 2022 obviously could not have motivated actions by Insler and "ALPA attorneys" that occurred 7-15 months earlier.[7]

## CONCLUSION

For the reasons stated above, the Court should dismiss the claims against ALPA without leave to further replead.

---

[7] As the SAC reiterates the other dismissed Title VII claims in the FAC, to the extent necessary ALPA respectfully incorporates by reference its motion to dismiss the FAC and supporting reply memorandum explaining why those claims lack merit. ECF Nos. 49 (at 11-15), 57 (at 11-15).

Dated: December 6, 2024

Respectfully submitted,

By: */s/ Rami N. Fakhouri*

James K. Lobsenz (*pro hac vice*)
Joshua J. Ellison (*pro hac vice*)
AIR LINE PILOTS ASSOCIATION,
  INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
Tel.: (703) 481-2423
Fax: (703) 481-2478
*Jim.Lobsenz@alpa.org*
*Joshua.Ellison@alpa.org*

Rami N. Fakhouri
Caleb A. Kennedy
GOLDMAN ISMAIL TOMASELLI
  BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Tel.: (312) 681-6000
Fax: (312) 881-5191
*rfakhouri@goldmanismail.com*
*ckennedy@goldmanismail.com*

*Attorneys for Defendant Air Line Pilots Association, International*