IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH JOHN OKA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 23 C 15793 |
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Joseph Oka is a pilot employed by United Airlines, Inc. He has sued United and his union, the Air Line Pilots Association International (ALPA), for violations of Title VII of the Civil Rights Act of 1964, and, with respect to ALPA, for breach of its duty to fairly represent him. Oka's claims largely arise from a requirement instituted by United in August 2021 requiring its employees to be vaccinated against COVID-19 unless granted a medical or religious accommodation. Oka made a request for a religious accommodation in late August 2021. United granted the request, but the accommodation amounted to unpaid leave with no benefits. Oka contends that employees who were given medical accommodations were unpaid but kept their benefits and that this amounted to disparate treatment based on his religion. In a previous ruling, the Court dismissed some of Oka's claims against United but allowed him to proceed on Title VII claims against United for religious-based discrimination and failure to accommodate his religious beliefs.

Oka also sued ALPA under Title VII and for breach of its duty of fair representation (DFR).  The Court dismissed Oka's DFR claims against ALPA except for a claim arising from its handling of a grievance Oka filed in 2022, which the parties call the "forced downgrade grievance."  Specifically, the Court concluded that Oka's allegations that ALPA's alleged reversal of course on a claimed earlier commitment to pursue the grievance and its alleged stalling of the grievance would support a claim that the union arbitrarily withdrew its support from the grievance in violation of the DFR.  Dkt. 59 at 24-25.  With regard to Oka's Title VII claims against ALPA, however, the Court concluded that Oka had failed to plausibly allege that any of ALPA's actions regarding United's vaccination policy or his grievances amounted to intentional discrimination based on religion; that ALPA failed to accommodate his religious beliefs; or that ALPA had retaliated against him for taking action protected by Title VII.  *Id.* at 25-29.

Oka then filed an amended complaint and a second amended complaint.  Oka made some procedural missteps, but the Court will skip over those for present purposes.  ALPA has moved to dismiss the second amended complaint under Rule 12(b)(6) for failure to state a claim and, in part, under Rule 12(b)(1) for lack of standing.  The Court will address Oka's Title VII claims first and will then address his DFR claim(s).

1.  **Title VII claims**

Oka attempts to assert a Title VII claim of religion-based discrimination against ALPA based on how it dealt with LOA 21-02.  LOA 21-02 was a May 2021 letter of agreement between United and the union that barred United from requiring COVID-19 vaccinations, provided financial incentives for getting vaccinated, and allowed United to designate airports as vaccine destinations if those locations limited access by

unvaccinated pilots. But in early August 2021, United instituted a vaccination mandate that required employees to submit proof of vaccination for COVID-19 by a date in late September 2021.

Oka's claim based on ALPA's involvement in LOA 21-02 is untimely. Title VII requires, as a prerequisite to suit, timely filing of a charge with the Equal Employment Opportunity Commission and exhaustion of the EEOC administrative process. 42 U.S.C. § 2000e-5(f)(1); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). An aggrieved person has 300 days from the date of the discriminatory action to file an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). LOA 21-02 was issued in May 2021, but Oka did not file an EEOC charge until about a year later, in May 2022. That was well beyond the 300-day limit. Oka's only excuse for the delay is that LOA 21-02 was in effect until late September 2021. That's not good enough. The limitations period starts when the employment decision is made and communicated to the employees, *see, e.g., Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004), and in this case that was in May 2021.

Timeliness aside, Oka includes no allegations in his second amended complaint that plausibly support a contention that ALPA's involvement in LOA 21-02 amounted to religious-based discrimination: the LOA included no differential treatment for unvaccinated religious and non-religious objectors. For these reasons, any Title VII claim against ALPA related to LOA 21-02 is dismissed.

In his response to the motion to dismiss, Oka describes the remainder of his religious discrimination claim against ALPA as follows (and the Court will hold him to this going forward):

> First, ALPA engaged in discrimination by acting in concert with UA to offer different and preferable benefits to medically accommodated pilots that were inaccessible to religiously accommodated pilots. Second, ALPA supported grievances pressed by other classes of protected pilots more favorably than claims made by religiously accommodated pilots.

Pl.'s Resp. to Def.'s Mot. to Dismiss at 10.

On the second of these points, the Court overrules, as it did before, Oka's contention that it violated Title VII for ALPA to pursue grievances on behalf of terminated employees but not on behalf of those who were put on unpaid leave. The Court previously ruled that "nothing [in the complaint] suggests that ALPA's decision to focus its resources on pilots who had been terminated rather than pilots who had been 'accommodated' (for both religious and medical reasons) was motivated by the religious nature of the pilots' objections." Dkt. 59 at 26-27. The same deficiency exists in the second amended complaint; Oka has not cured it. In his response to the motion to dismiss, Oka says, rather cryptically, that "medically exempt employees were assisted by purposeful and deliberate inaction," Pl.'s Resp. to Def.'s Mot. to Dismiss at 13, but he makes no effort to explain this and, more importantly, there is nothing in the complaint regarding a disparate practice in *pursuing grievances* for those with medical exemptions vis-à-vis those with religious exemptions. Oka's Title VII claim to this effect is dismissed, this time with prejudice given that he has now had two chances to plead a viable claim but has failed to do so.

On the first point argued by Oka in support of his religious discrimination claim, the core of Oka's claim is that "ALPA deliberately looked the other way to secure benefits for the medically exempt, even when those benefits were a violation of multiple company policies and the UPA. For the religious, ALPA did nothing and failed to press

4

their grievances." *Id.* at 11 (footnote omitted). ALPA says that the law didn't require it to push United to eliminate benefits for the medically exempt. That misses the point: Oka's contention is that ALPA made no effort to push United to treat religious objectors the same, more favorable way that it treated medical objectors.

ALPA also argues that Oka has not made factual allegations that would plausibly suggest that its alleged inaction in this regard was motivated by discriminatory intent vis-à-vis religious objectors to the vaccination requirement. But Oka's second amended complaint cites a number of remarks by various ALPA officials that he contends reflected animus toward religious objectors. *See* 2d Am. Compl. ¶¶ 109-120. ALPA's argument on this point largely amounts to a bit of misdirection: it argues that none of this suggests that ALPA's non-opposition to the vaccination mandate or its handling of Oka's "downgrade grievance" was motivated by anti-religious bias. But that's not the point here. As discussed, Oka's contention is that ALPA allowed to go unaddressed a significant disparity in treatment between those accommodated for medical reasons and those accommodated for religious reasons.

In other words, Oka's Title VII claim—at least this part of the claim—is not directed toward the vaccination mandate itself or toward his downgrade grievance. Rather, it's directed toward ALPA's alleged failure to challenge disparate treatment of those with religious exemptions and those with medical objectors. There's a legitimate question regarding whether the comments cited by Oka are connected to the claimed decision by ALPA not to oppose that disparity or to persons in ALPA's decision process, and at least some of what Oka cites may end up being inadmissible in evidence. But ALPA does not make the second of these objections, and the Court cannot

5

appropriately resolve the first as a factual matter on a Rule 12(b)(6) motion.[1]

In sum, Oka's claim against ALPA for religious-based discrimination (Count 3) survives, but only to the extent it is directed to ALPA's alleged failure to challenge disparate treatment between the benefits available to pilots with religious exemptions from the vaccination requirement and those available to pilots with medical exemptions. And here there is no basis for a separate failure to accommodate claim (Count 4), as Oka does not identify any actionable failure to accommodate distinct from the actions covered in what remains of his discrimination claim. Finally, Oka does not defend, and his second amended complaint does not support, a viable claim against ALPA under Title VII for engaging in protected activity (Count 5). The Court therefore dismisses with prejudice Counts 4 and 5 of the second amended complaint, as well as Count 3 to the extent it concerns anything other than ALPA's alleged failure to push for equal treatment of religious and medical objectors to the vaccination requirement..

**2.   DFR claim**

This leaves Oka's DFR claim against ALPA (Count 6). Oka says in his response to the motion to dismiss—and again, the Court is holding him to this—that he "does not try to resurrect his previously dismissed DFR claims. Oka's [second amended complaint] solely raises a claim for breach of the duty of fair representation as it pertains to his forced-downgrade grievance ('2022 Grievance'), which this Court has already

---

[1] There may be other problems with Count 3, including whether ALPA's inaction on this point actually resulted in an injury to Oka, but ALPA doesn't make that argument with respect to the Title VII claim, and in any event such an argument could not be resolved in ALPA's favor on the face of Oka's complaint.

found to be timely." Pl.'s Resp. to Def.'s Mot. to Dismiss at 3.[2]

In its ruling on Oka's original complaint, the Court allowed Oka's DFR claim based on ALPA's handling of the downgrade grievance to proceed. The Court stated as follows:

> As discussed, Oka has alleged that ALPA first supported his grievance, including by representing to the EEO that it would press the grievance to the System Board, but then "reversed course on [that] commitment" without any legitimate justification and "continuously stalled [his] forced downgrade grievance." The Court concludes that Oka's allegations, viewed as a whole, are sufficient to plausibly allege that ALPA arbitrarily withdraw its support from his potentially meritorious grievance.

Dkt. 59 at 24. ALPA now argues that this claim should be dismissed as unripe and for lack of standing because Oka alleges no loss caused by ALPA.

The Court concludes that Oka's DFR claim based on ALPA's handling of his downgrade grievance must be dismissed pursuant to Rule 12(b)(1) because it is unripe. Oka's grievance is not dead, and ALPA did not allow it to die. ALPA filed and argued for the grievance; submitted it to the System Board of Adjustment for resolution; and caused it to be scheduled for a hearing. But Oka turned down an October 2024 hearing before the System Board; he then caused a hearing scheduled for December 2024 to be cancelled (this appears to have been due to his lawyer's illness); and when a hearing was scheduled for February 2025, Oka declined to proceed. Oka's own delays and refusals aside, however, his grievance is still alive and kicking, and it is at least possible that it will succeed if he pursues it.

Given these circumstances, the Court concludes that the DFR claim regarding

---

[2] The Court makes no ruling at this time regarding whether evidence regarding the dismissed claims is actually relevant and admissible on the claims that remain. That is an issue for another day.

7

ALPA's handling of the downgrade grievance is not ripe for determination in court. In an analogous context, this Court has held that a DFR claim does not even accrue "until the System Board reache[s] its decision," because "an arbitration decision in [the plaintiff's] favor would have resulted in the relief [he] seeks . . . ." *Rios-O'Donnell v. Am. Airlines, Inc.*, 837 F. Supp. 2d 868, 875 (N.D. Ill. 2011) (Kennelly, J.). *See also, e.g., Brooks v. Air Line Pilots Ass'n, Int'l*, 630 F. Supp. 2d 52, 56 (D.D.C. 2009) (claim over refusal to withdraw a grievance was unripe because system board had not yet ruled); *Flury v. Marriott Int'l Inc.*, No. CV-19-04642, 2020 WL 2467271, at *3 (D. Ariz. May 13, 2020) (DFR suit over grievance representation was unripe because arbitration had not yet occurred). At the present time, Oka's challenge is unripe. As ALPA argues, Oka "may challenge ALPA's Grievance-related conduct . . . *after* the Board's award," Def.'s Mot. to Dismiss at 6, but not before.

Oka contends that further pursuit of the grievance through arbitration is futile because ALPA is biased against him. This contention does not excuse him from carrying the grievance through to conclusion. As ALPA argues, "speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust." *Perry v. Midstates Indep. Union*, 20 F. App'x 27, 31 (7th Cir. 2001). "Rather, the employee must put the grievance procedure to the test . . . ." *Id.*; *see also, e.g., Stumo v. United Airlines, Inc.*, 382 F.2d 780, 787 (7th Cir. 1967). Oka's allegations are insufficient to take his claim of futility out of the realm of speculation. In this regard, Oka's case is distinguishable from *Wickstrom v. Air Line Pilots Ass'n, Int'l*, No. 23 C 2631, 2023 WL 5720989 (N.D. Ill. Sept. 5, 2023). In that case, there was no still-pending grievance.

8

For these reasons, the Court dismisses Oka's remaining DFR claim against ALPA under Rule 12(b)(1) as unripe and thus need not deal with ALPA's other standing-related challenge.

## Conclusion

For the reasons stated above, the Court dismisses Count 4 and 5 of plaintiff's second amended complaint with prejudice; dismisses Count 6 as unripe; and denies defendant ALPA's motion to dismiss [dkt. no. 79] as to Count 3 insofar as that claim challenges ALPA's alleged disparate treatment of those with religious-based exemptions from defendant United's COVID-19 vaccination requirement as compared to those with medical-based exemptions.  The Court dismisses Count 3 with prejudice to the extent it asserts any other claim.  The in-person status hearing set for February 27, 2025 at 9:30 a.m. will proceed as scheduled.  If any party believes that any adjustments to the discovery and pretrial schedule are appropriate, the parties are to confer in advance of the status hearing and are to be prepared to report on this point at the hearing.

Date:  February 23, 2025

                                                     _____
                                                        MATTHEW F. KENNELLY
                                                        United States District Judge